## State of Vermont v. Charles Blackmer

[631 A.2d 1134]

No. 93-149

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed July 23, 1993

*Christopher C. Moll*, Windham County Deputy State's Attorney, Brattleboro, for Plaintiff-Appellee.

*Robert J. Appel*, Defender General, and *William A. Nelson*, Appellate Attorney, Montpelier, for Defendant-Appellant.

**Dooley, J.** Defendant appeals a decision that he be held without bail, arguing that (1) the State did not establish that the

evidence of guilt was great as is required by the Vermont Constitution in a denial of bail; (2) even if the constitutional right is inapplicable, the trial court abused its discretion in denying bail; and (3) the denial of bail deprived defendant of both substantive and procedural due process of law. We affirm.

On January 6, 1993, defendant was served with a temporary restraining order for relief from abuse prohibiting him from approaching his former girlfriend. On January 9, 1993, he was arrested for violating the restraining order and then released on conditions that he abide by it. One day later, on January 10, 1993, he was again arrested for violating the order. Because he had been released on condition he abide by the order, he was also charged with violating the condition of release. On January 12, 1993, he was released on conditions, including that he not consume alcohol or have probable cause found that he had committed a felony.

On February 23, 1993, defendant was charged with aggravated sexual assault on a nine-year-old girl, a crime for which the maximum punishment is life imprisonment. See 13 V.S.A. § 3253(b). The alleged crime occurred on February 22, while defendant was free on conditions of release from the earlier charges. At the time of arrest, his blood-alcohol level was tested at .09%. After a bail review hearing, the court ordered defendant to be held without bail, for the following reasons:

> His argument that he has "seen the light," while attractive, is less than convincing. In fact, it is not believed by this court. Were it a single order that had a single violation, it would be one thing. These are multiple orders and have multiple violations and the court concludes that the defendant is simply not motivated to abide by orders of the court.

The court referred to defendant as "seeing the light" because that was defendant's position as to why he should be released on conditions.

Defendant first argues that he may not be held without bail under Vermont Constitution chapter II, § 40 and 13 V.S.A. § 7553 because, although he is charged with an offense punishable by life imprisonment, the court could not find that "evidence of guilt is great." Chapter II, § 40 of the Vermont Constitution for offenses not punishable by life imprisonment states that there is a constitutional right to bail, but there is no

constitutional right to bail for offenses punishable by life imprisonment where the evidence of guilt is great. Thus, defendant argues that the right to bail exists where a defendant faces a punishment of life imprisonment if the State fails to show that evidence of guilt is great. Defendant argues that this is such a case.

■ This Court has determined that evidence meets the constitutional threshold if it meets the standards of V.R.Cr.P. 12(d) for establishment of a prima facie case. See *State v. Duff,* 151 Vt. 433, 440, 563 A.2d 258, 263 (1989). Under that standard, the State must establish "by affidavits, depositions, sworn oral testimony, or other admissible evidence 'that it has substantial, admissible evidence as to the elements of the offense . . . sufficient to prevent the grant of a motion for judgment of acquittal at the trial.'" *Id.* at 439, 563 A.2d at 263 (quoting V.R.Cr.P. 12(d)(2)). The Court emphasized that this standard adds two elements beyond that necessary for establishing probable cause: "(1) that *substantial, admissible* evidence of guilt exists, and (2) the evidence can fairly and reasonably convince a fact-finder beyond a reasonable doubt that defendant is guilty." *Id.* at 440, 563 A.2d at 263 (emphasis in original). In a later case, this Court emphasized that this standard "cannot be met by inadmissible evidence." *State v. Passino,* 154 Vt. 377, 381, 577 A.2d 281, 284 (1990).

The admissibility requirement imposed in *Passino* and *Duff* refers to admissibility of the evidence at trial. For purposes of analysis, we can view the process created by those decisions as involving two steps: (1) whether the State has shown evidence that can fairly and reasonably convince a fact-finder beyond a reasonable doubt that defendant is guilty, and (2) whether the State has shown this evidence will be admissible at trial.

Defendant asserts that the court ignored the second step and used inadmissible evidence in concluding that the evidence against him was great. This evidence included a medical record that had not been authenticated, V.R.E. 803; hearsay statements of the family and police that were inadmissible because the child victim was not available to testify, V.R.E. 804a(a)(2) and (3); and a statement of the child victim that did not name the perpetrator and was not analyzed for trustworthiness, V.R.E. 804a(b). Although the basis for the court's ruling is

somewhat confusing, especially in separating out admissibility in the bail hearing from admission at trial, we agree that the court failed to go through the second step of the process. Thus, the bail hearing record does not show that at least part of the evidence considered by the court will be admissible at trial. For example, without a foundation, there is no showing that the medical record will be admissible, a defect admitted by the State at the bail hearing.

The State argues correctly that it may proceed by affidavits. V.R.Cr.P. 12(d)(2). The child victim's affidavit, although it does not name the perpetrator, provides admissible evidence that a crime was committed, the details of the crime, and the availability of the victim to testify. It in turn supports the admissibility of the evidence offered in the affidavits of her mother and another family member by stating the age and availability of the minor. See V.R.E. 804a(a)(1), (3). These affidavits recount the victim telling them what transpired and naming defendant as the perpetrator. The victim's statement occurred shortly after the alleged assault such that "the time, content and circumstances of the statements provide substantial indicia of trustworthiness." V.R.E. 804a(a)(4); see *State v. Duffy*, 158 Vt. 170, 171, 605 A.2d 533, 535 (1992). Thus, the record establishes that the evidence of the family members will be admissible under the hearsay exception for statements from minor victims of sexual assault crimes. See V.R.E. 804a. Once this evidence is considered, the State has shown that evidence of guilt is great.

We caution that although the record clearly shows the evidence will be admissible in this case, that will not always be so. Trial courts have discretion in the admission of evidence, and normally that discretion must be exercised to determine whether evidence proffered by the State at the bail hearing will be admissible at trial. Failure to do so will often mean that defendant retains the constitutional right to bail.

Defendant makes three arguments why the denial of bail is erroneous even though there is no constitutional right to bail. Before addressing them specifically, we emphasize the narrowness of the question before us. We had occasion recently to explore the constitutional right to bail and the limits it places on the Legislature or the courts to deny bail in specific cases. See

*State v. Sauve*, 159 Vt. 566, 621 A.2d 1296 (1993). Except in very limited and special circumstances where the State's interest is legitimate and compelling, a court may not deny bail in the face of the constitutional right. *Id.* at 573–74, 621 A.2d at 1301. The *Sauve* requirements, to the extent they are based on the Vermont constitutional right to bail, do not apply in this case. Instead, the issue we address is whether in the absence of the constitutional right the court may deny bail because of a substantial and very recent record of violations of important conditions of release.

We also emphasize that we are not conducting a de novo proceeding on whether to grant bail in this case. Our standard of review is set forth in the applicable statute. We must affirm the trial court's decision if it is supported by the proceedings below. 13 V.S.A. § 7556(b).

Defendant's first argument is that the trial court decision is an abuse of discretion. We have held that even where there is no constitutional right to bail the trial court has the discretion to grant bail. See *Duff*, 151 Vt. at 441, 563 A.2d at 264. We have never comprehensively defined the breadth of a trial court's discretion. Our recent precedents recognize the existence of discretion without setting specific standards for its exercise. See *Passino*, 154 Vt. at 379, 577 A.2d at 283; *Duff*, 151 Vt. at 441, 563 A.2d at 264. Although the Legislature has specifically defined the right to bail where the Vermont constitutional provision applies, it has provided only that a defendant charged with a crime punishable by life imprisonment "shall not be bailable as a matter of right" when the evidence of guilt is great. 13 V.S.A. § 7553.

We have, however, defined the court's discretion sufficiently to address this case. The decision that forms the basis of our current law is *In re Dexter*, 93 Vt. 304, 314–15, 107 A. 134, 138 (1919), which first enunciated the discretion of the trial court to grant bail where the constitutional right is inapplicable. The Court noted that the discretion involved is "sound, judicial discretion, controlled by certain and well defined and established rules," but failed to describe those rules. *Id.* at 315, 107 A. at 138. It did state:

> Ordinarily, in practice, bail is refused after indictment found, in capital cases, where the proof of guilt is evident or

presumption great; but we are not called upon to define more particularly the practice or controlling features in such cases generally . . . . Had the county court exercised its discretion in determining the question, very likely we should leave the matter as there determined, let it be either way, without further consideration. But the court . . . decided against the relator as a matter of law. This it could not lawfully do. The relator was entitled to the benefit of the court's judicial discretion, and it not being accorded her, she was deprived of her right in that behalf.

*Id.* The defendant in *Dexter* had been acquitted, but the State obtained a new trial and the issue involved her right to bail at the second trial. The Court concluded that the circumstances ordinarily were sufficient to allow the defendant to have bail, but left the question entirely to the trial court.

*Duff* follows up on the language of *Dexter*, suggesting the considerations are similar to those in determining the right to bail post-conviction. See 151 Vt. at 441, 563 A.2d at 263–64. We required a hearing on whether the court should allow bail, but added that "the trial court is under no obligation to set any conditions of release as a result of that hearing." *Id.* at 441, 563 A.2d at 264.

The holdings in *Duff* and *Dexter* are similar to those in other states that have explored the issue. For example, the Massachusetts Supreme Judicial Court explained the standard as follows:

[B]ail in such a case is not a matter of right but is discretionary with the judge, who is to give due weight to the nature and circumstances of the case. On the subject of discretionary bail in capital cases, Blackstone's observations are no less pertinent today than they were two hundred years ago. "And herein," he said, "the wisdom of the law is very manifest. To allow bail to be taken commonly for such enormous crimes, would greatly tend to elude the public justice: and yet there are cases, though they rarely happen, in which it would be hard and unjust to confine a man in prison, though accused even of the greatest offense." 4 Blackstone, Commentaries (8th ed.) 299.

*Commonwealth v. Baker*, 177 N.E.2d 783, 786 (Mass. 1961) (citations omitted); see also *Arthur v. Harper*, 371 So. 2d 96, 100

(Fla. Dist. Ct. App. 1978) ("bail should not be routinely granted in such cases, but rather a heavy burden should be placed upon the defendant to clearly demonstrate that he is entitled to bail despite the gravity of the offense and the nature of the punishment he faces"), *aff'd, State v. Arthur,* 390 So. 2d 717 (Fla. 1980).

 We draw three points from *Duff, Dexter,* and the cases from other states: (1) in cases where the constitutional right does not apply, the presumption is switched so that the norm is incarceration and not release[1]; (2) the trial court's discretion is extremely broad; and (3) the trial court must exercise its discretion after giving the defendant an opportunity to be heard. Each of those points supports affirmance in this case. The trial court held a hearing and exercised its discretion. Its rationale is not arbitrary. If its discretion is broad and release is reserved only for extraordinary cases, we must conclude that the decision is supported by the record.

It is appropriate to briefly address the trial court's rationale. Conditions of release have become commonplace and are issued in every case to minimize the risk of flight and to protect the judicial process and the rights of participants, particularly the complaining witness, as well as the public. Nonmonetary conditions are widely endorsed nationally as the least restrictive method of assuring appearance and preventing the commission of further crimes. See II American Bar Ass'n, Standards for Criminal Justice, Standard 10-1.3(c) (2d ed. 1980). Appropriate conditions "impose reasonable restrictions on the activities, movements, associations, and residences of the defendant" as well as prohibiting the defendant from "using intoxicating liq-

---

[1] Unlike the dissent, we have separated the analysis under § 40 of the Vermont Constitution from that under the Fourteenth Amendment to the United States Constitution. If the trial court had relied on a general presumption of incarceration without more, we would agree that serious due process concerns would be raised. Because this is not what the trial court did, we have not analyzed this hypothetical circumstance for due process purposes. Thus, we do not believe we have endorsed the "extraordinary proposition" that a "presumption . . . [of] liberty pending trial is 'reversed,'" as the dissent claims. Our holding here is *only* that the denial of bail is consistent with § 40 and our law on pretrial release in cases where there is no Vermont constitutional right to bail. Our holding on due process is set forth *infra.*

uors or certain drugs." *Id.* Standard 10-5.2(c), (d). The Legislature has recognized the importance of conditions of release by allowing revocation of bail for violation of conditions of release in certain circumstances. See 13 V.S.A. § 7575. When the need for conditions is viewed in light of the possible punishment of life imprisonment, it is entirely appropriate for the court to deny bail unless it is fully convinced that the defendant will abide by the conditions that would be imposed if defendant were released. The trial court was not convinced here.

Next defendant argues that the bail denial decision deprives him of substantive due process of law because the court did not find he was a risk of flight or a danger to the public. He derives these requirements from *United States v. Salerno*, 481 U.S. 739, 741 (1987), where the United States Supreme Court upheld provisions of the federal Bail Reform Act, 18 U.S.C. § 3142(e)—which permits pretrial detention for certain offenses to prevent danger to the community—against a challenge that it violated the Fifth Amendment guarantee of due process.

We find *Salerno* to have only limited applicability in this case. Because it upholds the federal statute, there is no definitive ruling that any element of that statute is constitutionally required.[2] More important, the federal statute is very clearly a preventive detention measure, and the due process discussion is tailored to that purpose and effect. Cases that have taken clear principles and limits from *Salerno* have similarly involved specific preventive detention statutes. See, e.g., *Aime v. Commonwealth*, 611 N.E.2d 204, 206 (Mass. 1993); *Witt v. Moran*, 572 A.2d 261, 262 (R.I. 1990). With these limits in mind, we derive three applicable due process requirements from *Salerno*: (1) bail cannot be denied in order to inflict pretrial punishment; (2) pretrial detention cannot be excessive in relation to the regula-

---

[2] We have no statute that governs release in cases where the Vermont constitutional right to bail is absent, and nothing in *Salerno* states we must have one to comply with due process. Although defendant does not argue so, the dissent concludes that either there must be a statute or we must set the standards, apparently in statutory form. We see no constitutional impediment to deriving standards from analysis of individual cases against the *Salerno* principles in light of the standard of review. The statutory scheme allows speedy and meaningful appeal of condition of release disputes to this Court. See 13 V.S.A. § 7556.

tory goal, and (3) the interests served by the detention must be legitimate and compelling. 481 U.S. at 747, 749.

In applying these requirements to this case, it is important to understand what interests underlie the court's action. The separate treatment of life imprisonment cases in Vermont's constitution indicates that such crimes are treated "as a surrogate for a high risk of flight."[3] *Sauve*, 159 Vt. at 574, 621 A.2d at 1301. As applied to this case, a defendant who has a recent record of violating important conditions of release is an increased risk of flight when facing possible life imprisonment. There is also an increased risk of violence to the complainant and witnesses in this case. Given the importance of nonmonetary conditions of release to the administration of criminal justice, a judge's determination that a defendant will not abide by conditions of release implicates all functions of pretrial detention.

While denial of bail here is viewed by defendant as a form of preventive detention, there is no indication that this purpose entered the trial court's decision. The fundamental distinction between preventive detention and detention for violation of conditions of release was recognized by the Rhode Island Supreme Court in *Mello v. Superior Court*, 370 A.2d 1262, 1265 (R.I. 1977). There, the court upheld an order revoking bail after the defendant had committed a second offense while on bail. The court found that the bail revocation did not involve preventive detention:

> It has been argued that allowing a trial court to revoke release in this manner treads perilously close to the precipice of preventive detention. We have a different view of the terrain. . . . [Defendant] was not denied release on his second charge in order to protect the public. He was detained because he violated a reasonable condition of his original release.

---

[3] We recognize, as the dissent argues, that this relationship may not hold true if the Legislature adopts a theoretical life imprisonment punishment for crimes where there is no serious risk any defendant will ever be sentenced to life imprisonment. Further, as is currently proposed, the constitutional right may be narrowed further to allow denial of bail in other circumstances or to implement other purposes. Neither of these circumstances is present here.

. . . The authority of the court to revoke bail in certain situations ought not to be construed as authority to exercise preventive detention. The former is a sanction for past acts, the latter a prophylactic for the future. We are concerned with the former.

*Id.*; see also *People ex rel. Hemingway v. Elrod*, 322 N.E.2d 837, 841 (Ill. 1975) (revocation of bail for violation of condition of release is not preventive detention); see generally *State v. Ayala*, 610 A.2d 1162, 1173–74 (Conn. 1992) (adopting *Mello* rule and collecting similar cases from other states). Although *Mello* dealt with a different form of action—that is, revocation of bail rather than denial—that difference in form is not significant in understanding the interests involved.

Returning to the *Salerno* requirements, we find nothing punitive in the trial court's action. The trial judge made clear that the court was concerned with future compliance with conditions of release. It was not concerned with punishing defendant for past actions, only with whether defendant was an acceptable risk in view of his recent track record. Thus, the court considered defendant's argument that he had "seen the light" and would comply in the future and specifically rejected it in denying bail.

Nor can the court's actions be considered excessive in light of the interests involved. In analyzing this factor in *Salerno*, the Supreme Court gave the most weight to the fact that preventive detention was limited "to the most serious of crimes." 481 U.S. at 747. The class of cases for which there is no Vermont constitutional right to bail is even narrower, and this defendant faces possible life imprisonment.

The class of defendants is further narrowed here by the recent history of noncompliance with significant conditions of release. The court is not speculating about future compliance from a blank record.

Defendant reads into the *Salerno* language a specific command that the court relate its actions to the ultimate interests of risk of flight and preventive detention. Such a command would elevate form over substance and be inconsistent with our limited standard of review. Once the court determines that defendant cannot be trusted to comply with conditions of release,

the effect on risk of flight and other bail interests becomes obvious. On this point, we note that Congress has adopted a similar rationale for detention by creating a presumption that persons who have been convicted of offenses while on bail are dangerous; if unrebutted, this presumption allows for preventive detention with no specific finding of dangerousness. See 18 U.S.C. § 3142(e). The Bail Reform Act presumptions have been upheld as constitutional. See *United States v. Jessup*, 757 F.2d 378, 387 (1st Cir. 1985); see generally Comment, *When Preventive Detention Is (Still) Unconstitutional: The Invalidity of the Presumption in the 1984 Federal Bail Statute*, 61 S. Cal. L. Rev. 1091, 1120–22 (1988) (arguing that the presumption based on criminal activity while on bail is constitutional). The rationale for the presumption is that a " 'history of pretrial criminality is, absent mitigating information, a rational basis for concluding that a defendant poses a significant threat to community safety and that he cannot be trusted to conform to the requirements of the law while on release.' " *United States v. Coyne*, 800 F. Supp. 1018, 1020 (D. Mass. 1992) (quoting S. Rep. No. 225, 98th Cong., 1st Sess. 19, *reprinted in* 1984 U.S. Code Cong. & Admin. News 3202). At worst, the trial judge used a similar presumption here, presuming from multiple violations of conditions of release that no combination of conditions of release would ensure defendant's presence at trial or the safety of the alleged victim and witnesses and the public. That presumption was unrebutted by defendant.

In response to the third *Salerno* requirement, we find the interests protected by this order to be legitimate and compelling. They are the traditional interests on which conditions of release are determined, magnified because of the severe penalty faced by defendant.

■ Finally, defendant claims that the denial of bail deprives him of procedural due process. In holding that the Bail Reform Act does not deny due process of law, the Supreme Court in *Salerno* itemized the procedural protections built into the Act: (1) right to counsel; (2) opportunity of the defendant to testify and present information; (3) opportunity to cross-examine opposing witnesses; (4) statutory factors governing the preventive detention decision-making process; (5) a requirement of findings of fact and a statement of reasons for the decision; and

(6) a requirement of proof by clear and convincing evidence. 481 U.S. at 751–52. Decisions following *Salerno* have interpreted all or most of these attributes of the federal law as minimum requirements of procedural due process. See *Aime v. Commonwealth*, 611 N.E.2d at 214; *Witt v. Moran*, 572 A.2d at 267. Because of the liberty interest involved, procedural requirements are necessary to ensure accurate decision making whether or not the Vermont constitutional right to bail applies. We agree with those courts that view most or all of the procedural protections of the federal law as necessary for the state scheme to comply with procedural due process.

Except for the standard of proof, the decision in this case meets the requirements of procedural due process in the context of the Vermont bail decision-making scheme. Review in this Court provides the necessary check against unbridled discretion, and the decision in this case is based on findings and reasons. The court's decision does not, however, specify the standard of proof applied by the trial judge. We do not believe that the absence of a statement of the standard of proof is grounds to reverse this decision. Defendant never raised the standard-of-proof issue in the trial court and never contested the underlying facts. See *In re G.S.*, 153 Vt. 651, 652, 572 A.2d 1350, 1351 (1990) (failure to raise constitutional attack on standard of proof in trial court precludes review in this Court where Court cannot find that standard of proof had any effect on outcome of case). In fact, defendant's counsel appeared to admit at least some of the violations of conditions of release. Defendant's position in the trial court was that he now saw the error of his ways, had a new attitude and would abide by conditions of release in the future. In view of this position, the failure of the trial court to specify the standard of proof used was not plain error.

We are setting standards for the small group of serious crimes where the maximum punishment is life imprisonment and where the evidence against defendant is such that there is no constitutional right to bail. In determining the effect that actions of the defendant may have on the appropriateness of bail, we must keep in mind the severe punishment defendant is facing. See *Salerno*, 481 U.S. at 747 (denial of bail not an excessive response to problem of offenses committed while defendant

is on bail in part because denial of bail is limited to only "most serious of crimes"). In such a situation, the trial judge must have the discretion to deny bail to a defendant who is found to have committed serious, multiple and recent violations of bail conditions. That discretion was not abused here.

*Affirmed.*

**Johnson, J.,** dissenting. Today, the Court holds that, in cases in which a sentence of life imprisonment may be imposed, the presumption that an accused should remain at liberty pending trial is "reversed" so that the presumption becomes that the accused should be incarcerated. This extraordinary proposition finds no support in our precedents or in those of the United States Supreme Court. Nor is it compelled by, or even a logical conclusion from, Vermont's constitutional and statutory provisions that, in capital or life imprisonment cases, where evidence of guilt is great, the defendant shall not be bailable as a matter of right. On this ground alone, I am compelled to dissent.

Regrettably, the Court compounds its error by sanctioning a bail decision-making process that is both entirely without standards and completely unreviewable by this Court. I do not think that such a holding comports with due process or is consistent with this Court's responsibility to provide appellate review of trial court decisions.

## I.

Under *United States v. Salerno*, 481 U.S. 739 (1987), both substantive and procedural due process safeguards protect bail decision making. Substantive due process protects an individual from government interference with "rights 'implicit in the concept of ordered liberty.'" *Id.* at 746 (quoting *Palko v. Connecticut*, 302 U.S. 319, 325–26 (1937)). Procedural due process guarantees that any permissible governmental interference with a right is done in a fair manner. *Id.*

Both due process analyses begin with an examination of the individual interest threatened by governmental action. Under substantive due process, if governmental action threatens a right deemed "fundamental," then courts "must examine carefully the importance of the governmental interests advanced and the extent to which they are served by the challenged regu-

lation," *Moore v. East Cleveland*, 431 U.S. 494, 499 (1977), and uphold the government action only if it is narrowly tailored to further a "legitimate and compelling" governmental interest. *Salerno*, 481 U.S. at 749–50. Procedural due process imposes constraints on any governmental decision that would deprive an individual of liberty or property, *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976)), requiring that any procedure used to effectuate such a deprivation be analyzed by balancing the protected interest against any governmental interests, taking into account the risk of erroneous deprivation. *Id.* at 335.

Thus, both substantive and procedural due process apply to bail decisions, not because of any constitutional right to bail, but because liberty is a fundamental right independently guaranteed. "Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action." *Foucha v. Louisiana*, — U.S. —, —, 112 S. Ct. 1780, 1785 (1992). See also *Aime v. Commonwealth*, 611 N.E.2d 204, 210–11 (Mass. 1993) (tracing central importance of liberty in Anglo-American common law and constitutional law and concluding that freedom from governmental restraint "lies at the heart of our system of government and is undoubtedly a fundamental right").

Those charged with crimes who come before the court for bail decisions are not criminals. They are merely accused, not convicted; they enjoy a right to liberty by virtue of the presumption of innocence. "The principle that there is a presumption of innocence in favor of the accused is the undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the administration of our criminal law." *Coffin v. United States*, 156 U.S. 432, 453 (1895). The presumption cannot be legislated away; it is part of the right to fair trial protected by the Fourteenth Amendment. *Estelle v. Williams*, 425 U.S. 501, 503 (1976). Consequently, those accused of crimes are on the same legal footing as other noncriminal persons facing possible deprivations of liberty. Although governmental needs may outweigh an individual's liberty interest, *Salerno*, 481 U.S. at 748, liberty, even for the accused, "is the norm, and detention prior to trial or without trial is the carefully limited exception." *Id.* at 755. See also *State v. Duff*, 151 Vt. 433, 440, 563 A.2d 258, 263 (1989) (pretrial detention "necessarily cuts against the pre-

sumption of innocence inherent in our criminal jurisprudence" and is therefore limited).

Instead of guaranteeing that detention will be a "carefully limited exception," the majority begins with the dubious proposition that if defendant has no constitutional right to bail, the presumption in favor of liberty is somehow "switched so that the norm is incarceration and not release." Neither *Salerno* nor any other United States Supreme Court case supports this presumption. Nor do I find support for it in *Duff* or *In re Dexter*, 93 Vt. 304, 107 A. 134 (1919), the two Vermont cases cited by the majority. Even if there were support in the later two cases, I would discount it. They are not due process cases, and whether the court abused its discretion in denying bail can only be meaningfully examined in a due process context. *Salerno* provides that context.

Under *Salerno*, the initial due process burden is on the State. To overcome the accused's right to liberty, it must show a "legitimate and compelling" governmental need. Preventive detention for the safety of the community is the most frequently recognized need. See *Ludecke v. Watkins*, 335 U.S. 160, 171–72 (1948) (approving unreviewable executive power to detain enemy aliens during war); *Carlson v. Landon*, 342 U.S. 524, 537–42 (1952) (detention of Communist resident aliens pending deportation proceedings); *Addington v. Texas*, 441 U.S. 418, 426 (1979) (detention of dangerous mentally unstable individuals); *Salerno*, 481 U.S. at 750 (detention of dangerous criminal defendants). Other compelling interests recognized in the criminal context are risk of flight and danger to witnesses. *Id.* at 749.

Nothing in the Vermont Constitution or bail statutes explicitly states a compelling governmental interest to be served by denying bail. Chapter II, § 40 of the Vermont Constitution provides:

> All persons, unless sentenced, or unless committed for offenses punishable by death or life imprisonment when the evidence of guilt is great, shall be bailable by sufficient sureties. Persons committed for offenses punishable by death or life imprisonment, when the evidence of guilt is great, shall not be bailable as a matter of right.

This provision only identifies a class of people who are not bailable as a matter of right—those subject to penalties of death or

life imprisonment where evidence of guilt is great. The relevant statute, 13 V.S.A. § 7553, tracks the constitution:

> A person charged with an offense punishable by life imprisonment when the evidence of guilt is great shall not be bailable as a matter of right. If the evidence of guilt is not great, the person shall be bailable in accordance with section 7554 of this title.

Thus, § 7554 guides the trial court's decision-making process in all bail cases except when the accused has no right to bail and evidence of guilt is great. In the latter cases, bail is left to the trial court's discretion. *Duff*, 151 Vt. at 441, 563 A.2d at 263.

The bail amendment and corresponding statute manifest two governmental interests. Seriousness of potential punishment is a surrogate for seriousness of the crime; great evidence of guilt of the charged crime is a surrogate for likelihood of conviction. The only persons not bailable as a matter of right are those who meet *both* criteria. This combination suggests that the strongest governmental interest manifest in our bail scheme is potential for flight: those most likely to be convicted of crimes carrying the most severe punishments are the most likely to flee. Preventing danger to the public is a secondary—and, for purposes of due process balancing, a weaker—interest. If potential dangerousness were the primary interest, then no one accused of a crime, who demonstrated a propensity toward violence, would be bailable as of right. Legislative history of the 1982 bail amendment, the current version of § 40, shows that such a broad approach to dangerousness was specifically rejected. *State v. Sauve*, 159 Vt. 566, 572, 621 A.2d 1296, 1300 (1993).

Detention for violations of prior conditions—the reason relied on by the trial court and affirmed by the majority—is neither explicitly nor implicitly a governmental interest to be vindicated under our bail scheme. See *id.* at 575, 621 A.2d at 1301 (bail revocation for repeated violations of conditions does not rise to the level of a compelling governmental interest). Such violations should be relevant only to the extent that they bear on governmental interests that are part of the bail scheme—preventing flight, and to a lesser extent, minimizing danger to the public. The trial court did not find defendant was at risk to flee or endanger the public. Likewise, it did not con-

clude that his prior violations rendered him a greater risk to flee or endanger the public. Its only conclusion was that "defendant is simply not motivated to abide by orders of the court." This reasoning is far too broad to satisfy due process.

Moreover, even if we accept that our current bail scheme has, as a governmental interest, preventing danger to the public, I do not understand how the majority moves from recognizing that interest to creating a presumption of incarceration for all those without a right to bail. We are not free to interpret our bail provisions—statutory or constitutional—in a way that violates the fundamental right to liberty guaranteed by the Fourteenth Amendment to the United States Constitution. Hence, we cannot meaningfully analyze § 40 in isolation from the requirements of the due process clause as discussed in *Salerno*. *Salerno* allows for a presumption of dangerousness, if appropriately limited, but the legislature has simply not created one here. Rather, it merely gave courts the discretion to deny bail to some defendants, and *Salerno* limits how courts can exercise that discretion. Under *Salerno*, even a presumption of dangerousness is only the beginning of a carefully limited inquiry into whether the accused is in fact dangerous. And even if the accused is *found*—not presumed—dangerous, the court must still inquire whether incarceration is necessary to prevent the danger. The only presumption that I find any support for is the presumption of innocence.

## II.

Assuming that our bail scheme manifests a legitimate governmental interest, it is still inadequate under *Salerno*. Due process requires that a bail decision be narrowly tailored to effectuate a compelling governmental interest. Here, no statutory factors guide the trial court's discretion. Neither today's opinion nor prior Vermont case law provides any such guidelines. Instead, the majority relies on *Dexter*, 93 Vt. at 315, 107 A. at 138, for the proposition that if the exercise of discretion is "controlled by certain and well defined and established rules," then "we would leave the matter as there determined, let it be either way, without further consideration." This would be an unremarkable proposition except the "well defined and established rules" are not articulated in *Dexter* or any other case.

Apparently the majority believes that as long as the trial court follows unstated rules, this Court must rubber stamp the result. This is not the strict scrutiny required by due process; it is no scrutiny at all.

The closest this Court has come to making "well defined and established rules" is *Duff*, which suggests that the trial court look at considerations similar to those used in determining post-conviction bail. 151 Vt. at 441, 563 A.2d at 263–64 (citing with apparent approval *Fountaine v. Mullen*, 336 A.2d 1138, 1144 (R.I. 1976)). Today, the Court, while apparently citing *Duff* with approval, takes a step back from that decision by failing to apply any such standards. Post-conviction bail decision making is controlled by statute. See 13 V.S.A. § 7574 (judge shall consider factors set forth in 13 V.S.A. § 7554(b) and defendant's conduct during trial and the fact of conviction) and 13 V.S.A. § 7554(b) (judge shall look at "nature and circumstances of the offense charged, the weight of the evidence against the accused, the accused's family ties, employment, financial resources, character and mental condition, the length of residence in the community, record of convictions, and record of appearance at court proceedings or of flight to avoid prosecution or failure to appear at court proceedings"; judge may also consider any "[r]ecent history of actual violence or threats of violence" as bearing on the "character and mental condition of the accused"). The majority does not adopt these or any such guiding considerations for pretrial bail decisions. We are left with an irrational result: persons merely accused of crimes, who still enjoy a presumption of innocence, are given less due process protection than those convicted of crimes, who are no longer entitled to that presumption.

The legislature, of course, could pass a statute setting standards for release of those not entitled to bail. It has not done so and need not do so, but, in the absence of such a statute, due process requirements apply no less rigorously. This Court must either set standards for principled bail decision making or require that the trial court set and apply such standards. Neither was done here.

In *Salerno*, the Court upheld the federal bail act because it found the act appropriately balanced the government's need to protect the community from dangerous defendants with nu-

merous provisions protecting defendants. See 481 U.S. at 751. Clarification of what due process requires in denial-of-bail decisions is provided in *Aime*, 611 N.E.2d 204, and *Witt v. Moran*, 572 A.2d 261 (R.I. 1990).

In *Aime*, the Massachusetts Supreme Judicial Court struck down, on due process grounds, recently enacted amendments to its state's bail law, which provided that a judge may exercise discretion to refuse bail to any person whose release will endanger the safety of any person or the community. 611 N.E.2d at 206. Analyzing the Massachusetts statute under *Salerno*, the court held that the state could not enact a preventive detention scheme "without providing safeguards similar to those which Congress incorporated into the Bail Reform Act." *Id.* at 212. The court found the bail amendments fatally defective, in many ways not applicable here, but was especially critical of the "unbridled discretion" given to judges "to determine whether an arrested individual is dangerous." *Id.* at 214. In contrast, the federal bail statute contains provisions that, consistent with substantive due process, narrow the judge's inquiry (for example, the court must find that no release conditions "will reasonably assure the . . . safety of any other person and the community," 18 U.S.C. § 3142(f)), and the statute enumerates factors to be considered in the bail decision.

Similarly, the Rhode Island Supreme Court applied *Salerno* to its own state's bail statute, which allows pretrial detention of certain classes of defendants defined by statute as dangerous. The court upheld the statute but also formulated procedures necessary to make it conform to federal due process, including a requirement that, in deciding whether to deny bail, the trial court make findings of fact on the record regarding the individual defendant's dangerousness. *Witt*, 572 A.2d at 266. Next, the court held that any restrictions on defendant's liberty must be consistent with the particular circumstances of the case. *Id.* at 267. To guarantee this, the trial court must consider any alternatives to denying bail that would ensure that the defendant would not be a danger to the community. *Id.* Finally, the court endorsed *Salerno*'s procedural due process protections, including the clear-and-convincing standard for a finding of dangerousness, reasoning that a heightened standard promotes a more accurate judicial determination, which is necessary to justify restrictions on defendant's liberty prior to trial. *Id.*

I believe *Aime* and *Witt* properly apply due process standards mandated by *Salerno* to bail review determinations for defendants who are not guaranteed bail as of right. Like the statute analyzed in *Witt*, our bail statute, 13 V.S.A. § 7553, singles out a class of offenders who may be denied bail. But merely being a member of the class is not enough to support preventive detention. Rather, the court must exercise its discretion within the context of an individualized inquiry outlined in *Witt* and find by clear and convincing evidence that a particular defendant would be a danger to an individual or the community and that no conditions of release would be sufficient to prevent that danger. I would remand for proceedings consistent with that purpose. See *Duff*, 151 Vt. at 442, 563 A.2d at 264 (where trial court made inadequate findings on bail decision, case was remanded so it could show on the record how it had exercised its discretion).

On remand, I would also require that the trial court appropriately apply the clear and convincing standard. Having improperly invented a presumption of incarceration, the Court puts the burden of proof on defendant to show that he deserves liberty. For example, the Court states that "it is entirely appropriate for the court to deny bail unless it is fully convinced that the defendant will abide by the conditions that would be imposed if defendant were released," even though it apparently accepts the *Salerno* requirement that there must be clear and convincing evidence that defendant is a risk to flee or endanger the public in order to deny bail. Cf. *Foucha*, — U.S. at —, 112 S. Ct. at 1787 (striking, on due process grounds, a Louisiana statute requiring persons to prove that they are not dangerous in order to be freed from confinement in a mental institution).

The Court states that *Salerno* has "only limited applicability" because it upholds the federal bail statute without making a definitive ruling on what parts of it are constitutionally required. *Witt* and *Aime*, however, treat all of the *Salerno* protections as due process requirements. Also, the Court seeks to distinguish all three cases because they deal with bail statutes that are explicitly preventive detention measures. I find this a distinction without a difference. Surely 13 V.S.A. § 7553, at least as the Court today interprets the bail scheme, provides for preventive detention. Surely that was

what the trial court sought to achieve in this case. What is lacking in the Court's interpretation of our bail scheme is not the goal of preventive detention, but any reasoned limitations on the court's discretion to detain an accused who lacks a constitutional or statutory right to bail.

## III.

Finally, and most disturbing from a due process perspective, is the Court's approach to reviewing the trial court's bail decision. Review in this Court should, as the Court today asserts, "provide[] the necessary check against unbridled discretion." Because defendant's fundamental right to liberty is at stake and because any attempt to deprive him of liberty should be strictly scrutinized, the Court's review of the trial court's discretion falls woefully short. Instead of requiring the trial court to make a record that conforms to due process, the Court simply hypothesizes the trial court's reasoning and allows it the benefit of various presumptions—for example, a presumption that defendant's "'history of pretrial criminality'" leads to the conclusion that "'he cannot be trusted to conform to the requirements of the law while on release,'" 160 Vt. at 462, 631 A.2d at 1141 (quoting *United States v. Coyne*, 800 F. Supp. 1018, 1020 (D. Mass. 1992)), which the Court then enlarges to a presumption that multiple violations of prior conditions lead to a conclusion that "no combination of conditions of release would ensure defendant's presence at trial or the safety of the alleged victim and witnesses and the public." *Id.* This use of unsubstantiated presumptions is inconsistent with the due process requirement that decisions involving fundamental rights must be narrowly and individually tailored. Bail inquiries should be based on facts, not presumptions or speculations: Was this defendant at risk to flee or endanger others? Who was endangered—the victim, witnesses, the public? Was there any condition that would effectively protect the endangered person(s)? If not, why not?

This case illustrates the danger of allowing a looser inquiry. Defendant came before the court for a review of a no-bail decision on a charge of aggravated sexual assault. Reading the transcript and the court's opinion, the court apparently looked at defendant's prior history in the court file, found violations of

conditions and charges of violations of conditions, and decided that defendant could not comply with conditions and should be incarcerated. The issue is not, as the Court states, whether the trial court can in its discretion deny bail for "substantial" violations of "important" conditions of release. These characterizations are the Court's. The trial court never did any such analysis.

The trial court did not substantively evaluate defendant's violations of conditions. If the court found the violations "substantial" or "serious," it did not say so. The prior violations, all apparently involving defendant illegally approaching a former girlfriend, were not related to the current charge. Under *Sauve*, defendant could not have his bail revoked for any of these violations or for violating the no-alcohol condition. 159 Vt. at 575–76, 621 A.2d at 1302. The court provides no explanation about how the former violations relate to the new charge. Finding prior violations in the record should be the beginning not the end of the inquiry.

*Salerno* requires that pretrial detention be a "carefully limited exception." 481 U.S. at 755. The Court today does not require the trial court to be either careful or limited in its decision making; it has reduced a fundamental concept to an empty formula. Under the Court's decision, an accused could be denied liberty merely because it is inconvenient for the court system to deal with him, as long as some hypothetical governmental interest can be produced as a cover.

Moreover, the problem with the trial court decision here is not that it is wrong, but that we cannot tell if it is wrong. The trial court's rationale is accepted because it "is not arbitrary." Both the trial court's decision making and this Court's review of it fall far short of the strict scrutiny required under substantive due process analysis.

## IV.

The biggest loser in today's decision is not the bail decision-making process. It is the presumption of innocence. Based only on an accusation—not a conviction—of aggravated sexual assault, defendant has lost his presumption of innocence and faces indefinite incarceration, without a trial, without even a finding that he is at risk to flee or endanger others.

Although the Court stresses that bail as of right is denied only to those committing the "most serious of crimes," the legislature can easily enlarge that class by attaching the penalty of possible life imprisonment to any crime. The presumption of innocence is too easily eroded by fear of those accused of criminal behavior. We should not allow that erosion to be compounded by allowing the process of making bail decisions to be a casual one.

> Honoring the presumption of innocence is often difficult; sometimes we must pay substantial social costs as a result of our commitment to the values we espouse. But at the end of the day the presumption of innocence protects the innocent; the shortcuts we take with those whom we believe to be guilty injure only those wrongfully accused and, ultimately, ourselves.

*Salerno*, 481 U.S. at 767 (Marshall, J., dissenting).

I would reverse and remand for a bail review that comports with the requirements of due process.

I am authorized to state that Justice Morse joins in this dissent.