2015 VT 16

**STATE of Vermont v. Lynwood WHITTEMORE**

[____ A.3d ____]

No. 05-075

¶ 1. March 4, 2005. Defendant Lynwood Whittemore appeals the Lamoille District Court's order denying him bail pursuant to the court's discretionary authority granted in 13 V.S.A. § 7553. The court found that defendant has been charged with first degree aggravated sexual assault on a minor, a crime that carries a potential life sentence, and that evidence that defendant committed the crime is great. Under these circumstances, the court concluded that defendant is not bailable as a matter of right, and after a hearing on the matter, denied bail in a written order. After reviewing the transcript of the proceedings below and the court's written order, we affirm the court's conclusion that defendant is not bailable as a matter of right because he is charged with a crime punishable by life imprisonment and evidence of guilt is great. Nonetheless, we remand the case because the record of the proceedings

below does not indicate the grounds upon which the district court exercised its discretion to deny bail.

¶ 2. Defendant first challenges the court's finding that evidence of guilt is great. Under 13 V.S.A. § 7553, the State must satisfy the court that it has substantial, admissible evidence legally sufficient on each element of the crime charged to sustain a verdict of guilty. *State v. Turnbaugh*, 174 Vt. 532, 534, 811 A.2d 662, 665 (2002) (mem.). The standard has been met here. Defendant is charged with first degree aggravated sexual assault on a child under the age of ten at a time when defendant was over the age of eighteen, 13 V.S.A. § 3253(a)(8). Thus, the State must prove that defendant committed sexual assault on M.W. by engaging in a sexual act with her at a time when the statutory age discrepancy existed between them. *Id.* (incorporating by reference elements of sexual assault contained in 13 V.S.A. § 3252).

¶ 3. In support of its position, the State introduced two pieces of evidence: a transcript of a police interview with the victim and an affidavit from the officer who conducted the interview. As to the interview transcript, the court found that it was a sworn statement by the victim in which she described an incident that occurred when she was either six or seven years old. She indicated that defendant came up behind her while she was seated in her grandmother's yard playing with her sisters. She alleges that he then placed a jean jacket over her so that her body was covered, and that he proceeded to forcibly insert his finger into her vagina and rub her vaginal area for approximately five minutes. As to these allegations, the court found that her descriptions contained "significant detail" of the "environment, circumstances and situation surrounding the alleged offense." Our review of the transcript confirms this finding.

¶ 4. Defendant asserts three principal challenges to the court's conclusion as to the sufficiency of the evidence: (1) that

the interview transcript is not a sworn statement reducible to admissible evidence; (2) that the interview techniques utilized by the police officer who conducted the interview were so leading and suggestive that the statements elicited cannot be relied upon by the court in reaching its determination; and (3) that the court used the wrong standard in reaching its conclusion. We reject all three.

¶ 5. The interview contains statements by the victim that sufficiently approximate an oath. At the beginning of the interview, Detective Barber states the names of those present, and then alludes to the fact that the victim, M.W., has established that she knows the difference "between the truth and a lie." Immediately after M.W. finished giving her statements about her alleged interactions with defendant, the detective asked her the following questions on the record:

> Q: . . . And has everything that you've told me been the truth and nothing but the truth as best as you can remember?
>
> A: Yes.
>
> Q: So help you God?
>
> A: Yes.

At the hearing on this matter and in its order, the district court determined that this exchange rendered the interview a sworn statement of the victim. The court rejected defendant's argument that the exchange was insufficient because it came at the end of the interview, noting that most affidavits are not sworn until after they are given. We agree with the court's observation that any deficiencies are of form and not substance, and find that the interview transcript was competent evidence in the context of a bail review hearing under § 7553.

¶ 6. We also reject defendant's claim that the court should not have accepted the interview as evidence of guilt because the interview techniques utilized undermined its credibility. Defendant calls our attention to a number of different places where the detective asked the victim leading questions that were designed to elicit specific responses. Nonetheless, our review of the transcript as a whole leads us to conclude, as the trial court did, that the questions asked and the answers given, if believed by a jury, would be sufficient to support a conviction on these charges. Ultimately, any flaws in the interview process itself go to the weight that the evidence should be given at trial, and not to whether it can be used to meet the State's burden on bail review. See *Turnbaugh*, 174 Vt. at 534, 811 A.2d at 665 (holding that court reviewing bail must not seek to weigh evidence, but rather must determine only if such evidence is sufficient to sustain a guilty verdict). Moreover, the court must review the State's evidence in the light most favorable to the State, excluding the effect of any modifying evidence introduced by defendant. *Id.* The trial court noted this in reaching its conclusion, and specifically cited to *State v. Turnbaugh*. Accordingly, we also reject defendant's argument that the district court did not use the proper standard when evaluating the evidence in this case.

¶ 7. As the court recognized in its order, § 7553 "permits — but does not mandate — the Court to hold persons charged with crimes carrying life sentences without bail if evidence of guilt is great." See *State v. Blackmer*, 160 Vt. 451, 456, 631 A.2d 1134, 1138 (1993) ("[E]ven where there is no constitutional right to bail the trial court has the discretion to grant bail."); accord *Turnbaugh*, 174 Vt. at 535, 811 A.2d at 666. Despite this language in its order, the court concluded that it was "compelled" to deny the motion for release in light of its findings on evidence of guilt. But as our cases and the court's earlier statement make clear, the finding on evidence of guilt does not compel the

decision to deny bail; rather the court enjoys extremely broad discretion. *Blackmer*, 160 Vt. at 458, 631 A.2d at 1139. Therefore, the district court must articulate some legitimate government interest in detaining defendant so that this Court can be assured that defendant is not being arbitrarily detained. At the hearing in this Court, the State conceded that the trial court had not articulated the grounds on which its exercise of discretion rested. Though the State did file a memo in the district court suggesting that risk of flight, or protection of the public — in particular, the victim and her family — might justify the court's decision, the trial court's order and statements at the hearing it held give no indication that it chose either of these justifications, or that either justification would be supported by the evidence and other factors that might influence the court's discretion, e.g., 13 V.S.A. § 7554.

¶ 8. Although we conclude that the State has met its burden of showing that, pursuant to 13 V.S.A. § 7553, defendant is not entitled to bail as a matter of right, we remand because the record of the proceedings below does not indicate how the court exercised its discretion in deciding not to grant defendant's bail request.

*Affirmed in part, and remanded in part. Upon remand the court shall supplement or modify its order forthwith, stating the reasons that support its exercise of discretion.*