2015 VT 25

**STATE of Vermont v. Anthony BRAY**

[___ A.3d ___]

No. 09-049

¶ 1. March 10, 2009. Defendant Anthony Bray appeals from the district court's decision to hold him without bail pending his trial. Defendant is charged, among other things, with kidnapping, which carries a maximum term of life imprisonment. 13 V.S.A. § 2405. Defendants charged with life-imprisonment crimes may be held without bail "when the evidence of guilt is great." Id. § 7553.

¶ 2. Here, the State's evidence of defendant's guilt consisted of affidavits from a police officer concerning the crimes, but not identifying defendant, and of a taped oral statement by J.B., in which J.B. stated that he had overheard defendant admit to committing the kidnapping. The statement was played into the record on the first day of the bail hearing. Before admitting the statement over defense counsel's objection, the trial court noted that it was admissible because "[i]t's a statement given by a person who's represented to be a witness."

¶ 3. At the second day of the hearing, defendant called J.B. to testify. The following exchange occurred between defense counsel and J.B.:

> Q: You told the police in this case that Anthony . . . maybe among others, left your house on the night of December 15th and went over to [the victim's] house and committed crimes against him, and then came back and talked about it. Is that what you told the — is that in essence?
>
> A: That is what I told the police but it is not true, and there's a

reason for that if you'd like to know.

¶ 4. Following this exchange, the court noted that J.B.'s attempted recantation potentially exposed him to criminal liability, either for giving a false statement to the police or for perjury. J.B. then invoked his right against self-incrimination and declined to testify further. Accordingly, to safeguard that right, the court determined that J.B. should have an opportunity to consult with his attorney before being asked to testify. Following inconclusive discussions of whether the State would offer J.B. use immunity to testify, the court decided to continue the hearing until February 18, so that J.B. could consult with an attorney.

¶ 5. On February 18, defense counsel again offered to call J.B. to testify, but the court did not allow him to take the stand, finding that he had not yet consulted with an attorney at sufficient length to satisfy the court that he fully understood the potential implications of testifying. Defendant submitted to this Court a letter dated February 18 and addressed to the trial court, in which defendant avers that he has spoken to his lawyer and fully understands the consequences. However, the record does not reflect that the letter was submitted to the trial court during the hearing, and it appears that it was not. At the hearing, no mention was made of the letter, and defendant's attorney stated only that defendant *would be* prepared to testify if given a chance to consult with an attorney.

¶ 6. The court, as noted, declined to allow J.B. to take the stand. Nor did the court reset the hearing for a later date, as it suggested it might do early in the February 18 hearing. Instead, the February 18 hearing closed with the court stating that it was likely to hold defendant without bail, and that a written decision with findings would follow. Defendant appealed immediately following the hearing,

and the court issued a written decision a few days later.

¶ 7. In its decision, the court correctly stated that the State had the burden at the bail hearing to establish "by affidavits, depositions, sworn oral testimony, or other admissible evidence that it has substantial, admissible evidence as to the elements of the offense . . . sufficient to prevent the grant of a motion for judgment of acquittal at the trial." *State v. Blackmer,* 160 Vt. 451, 454, 631 A.2d 1134, 1136 (1993) (quotation omitted). The court noted, correctly, that we have held that sworn oral statements are the functional equivalent of affidavits. *State v. Bushey,* 2009 VT 12, ¶ 5, 185 Vt. 597, 969 A.2d 119 (mem.). The court recounted the sworn statement of the police officer, which laid out the brute facts of the kidnapping, and then discussed J.B.'s statement, which was the only evidence connecting defendant to the kidnapping.

¶ 8. The court concluded that, because it was bound to consider the State's evidence in the light most favorable to the State and disregard modifying evidence, the State had made out a prima facie case notwithstanding J.B.'s attempted recantation. The court noted, however, that the State "may have difficulties with proof at trial." Then, despite having earlier decided not to allow J.B. to testify, the court stated that it "had reason to believe that [the] original statement is true and that his recantation is false." In support of this statement, the court took pains to reject an explanation for the recantation offered by defendant's mother, who lives with J.B.

¶ 9. The trial court here erred in not allowing J.B. to testify on February 18. As we noted in *State v. Passino,* 154 Vt. 377, 380, 577 A.2d 281, 284 (1990), "the determination that the defendant can be held without bail must rest on a finding that the State has the evidence to convict." Under *Passino,* "if the challenge [to evidence offered at a bail hearing] is based on the application of an exclusionary rule because the use of the evidence would violate the constitutional rights of the defendant, the court should engage in a two-step process." *Id.* at 382, 577 A.2d at 285.

¶ 10. First, the court must "determine whether the State has sufficient evidence to deny bail without considering the evidence challenged by the defendant. If such evidence is found, the court need not consider further the challenge to the evidence in making its bail decision." *Id.* Here, of course, the only evidence linking defendant to the kidnapping was J.B.'s statement to the police. Thus, "the court must go forward to . . . determine whether the State can make out a prima facie case of compliance with applicable constitutional requirements" for that statement's admissibility. *Id.* at 382-83, 577 A.2d at 285. That determination, as we took pains to note in *Passino,* "has no preclusive effect on the ultimate determination of the admissibility of the evidence" at trial. *Id.* at 383 n.2, 577 A.2d at 285 n.2.

¶ 11. The trial court here did not state why J.B.'s oral statement was admissible, and as noted, the court also determined that J.B.'s attempted recantation was not credible despite offering him no opportunity to testify further about why he was attempting to recant or why he had lied to the police officer in the initial statement. Thus, the court erred in not allowing him to testify about the prior statement on which the State's entire case was premised. Without hearing further testimony from J.B., the trial court struck too soon in making the credibility determination it did. Such a determination would of course be within the province of the trial court, *State v. Wigg,* 2005 VT 91, ¶ 37, 179 Vt. 65, 889 A.2d 233, but only after allowing J.B. to testify.

¶ 12. The character of J.B.'s testimony would seem to bear directly on the central question here: whether the earlier sworn

statement is admissible. On remand, then, after hearing further testimony from J.B., the trial court may not hold defendant without bail unless it finds, in accord with *Passino* and *Blackmer*, that "substantial admissible evidence of guilt exist[s] and the evidence [is] sufficient to fairly and reasonably convince a factfinder beyond a reasonable doubt that defendant is guilty." *Passino,* 154 Vt. at 380-81, 577 A.2d at 284 (quotation omitted). The court must make explicit its reasons for determining, for purposes of the bail determination, whether the evidence is admissible.

*Reversed and remanded for proceedings consistent with the views expressed herein.*