# ENTRY ORDER

2018 VT 89

SUPREME COURT DOCKET NO. 2018-239

AUGUST TERM, 2018

| | | |
|---|---|---|
| State of Vermont | } | APPEALED FROM: |
| | } | |
| | } | |
| v. | } | Superior Court, Rutland Unit, |
| | } | Criminal Division |
| | } | |
| Eric J. Hugerth | } | DOCKET NO. 672-6-18 Rdcr |
| | } | |
| | | Trial Judge: Cortland Corsones |

In the above-entitled cause, the Clerk will enter:

¶ 1.     Defendant is charged with five crimes,[*] one of which is aggravated sexual assault on a child in violation of 13 V.S.A. § 3253a(a)(8), for which the penalty is imprisonment for not less than twenty-five years with a maximum term of life.  The alleged victim of the crimes is M.L., age six.

¶ 2.     The State moved to hold defendant without bail, pursuant to 13 V.S.A. § 7553, which states: "A person charged with an offense punishable by life imprisonment when the evidence of guilt is great may be held without bail."   At the weight of the evidence hearing conducted on July 9, 2018 the Rutland superior court found that that the evidence of defendant's guilt on this charge was great, based largely on M.L.'s sworn interview statement (CFAC interview) and an affidavit by Police Chief Ed Dumas.  The defense objected to the use of M.L's CFAC interview because it was neither an affidavit nor sworn testimony under V.R.E. 603.  As such, the defense contended the interview did not comply with the V.R.Cr.P. 12(d) standard for admissible evidence articulated by this Court in State v. Duff, 151 Vt. 433, 440, 563 A.2d 258, 263 (1989).  The court ruled that Chief Dumas's interview with M.L. was admissible evidence and was sufficient to meet the V.R.Cr.P. 12(d) standard and admitted it as a sworn oral statement.

---

[*] The five alleged crimes are: (1) lewd and lascivious conduct with a child in violation of 13 V.S.A. § 2602, a felony with a maximum term of imprisonment of fifteen years; (2) aggravated, repeated sexual assault on a child in violation of 13 V.S.A. § 3253a(a)(8), a felony with a maximum sentence of life imprisonment; (3) showing indecent material to a minor pursuant to 12 V.S.A. § 2802(b)(1), a misdemeanor with a maximum penalty of one year; (4) alcohol enabling by a minor pursuant to 7 V.S.A. § 658(a)(2), a misdemeanor with a maximum penalty of two years; and (5) lewd and lascivious conduct pursuant to  13 V.S.A. § 2601, a felony with a maximum term of imprisonment of five years.

¶ 3.    Finding that evidence of defendant's guilt was great based on the State's exhibits, the court addressed the factors listed under 13 V.S.A. § 7554 and concluded that no conditions of release would adequately assure public safety or mitigate defendant's risk of flight and ordered that defendant should be held without bail pursuant to 13 V.S.A. § 7553.  The court also imposed conditions prohibiting defendant from contacting, abusing, or harassing M.L. in jail or upon release.

¶ 4.    On appeal, defendant asserts that the court erred in considering M.L.'s CFAC interview when determining whether evidence of guilt was great and ultimately denying bail because the interviewing officer: (1) took steps to ensure M.L.'s truthfulness at the end of the interview rather than the beginning, and (2) failed to obtain sufficient guarantees that M.L. was telling the truth during the interview.  We conclude that: (1) the fact that M.L. affirmed he told the truth at the end of his interview, rather than at the beginning, did not undermine the validity of his sworn statement; and (2) M.L.'s CFAC interview was sufficient to constitute a sworn statement, which is the equivalent of an affidavit and thus is admissible evidence pursuant to V.R.Cr.P. 12(d). We affirm.

¶ 5.    The Vermont Constitution, implemented through 13 V.S.A. § 7553, specifically provides that "[a] person accused of an offense punishable by . . . life imprisonment may be held without bail when the evidence of guilt is great." Vt. Const. ch. II, § 40(1); Duff, 151 Vt. at 436, 563 A.2d at 261.  The trial court's discretion in determining whether to hold a defendant without bail is extremely broad, and our review of the evidence relied upon by the trial court is de novo. State v. Hardy, 2008 VT 119, ¶ 10, 184 Vt. 618, 965 A.2d 478 (mem.).  We review the trial court's bail decision based on the record below.  State v. Avgoustov, 2006 VT 90, ¶ 4, 180 Vt. 595, 907 A.2d 1185.

¶ 6.    In State v. Duff, this Court adopted the standard in Rule 12(d) of the Vermont Rules of Criminal Procedure as the standard of review under 13 V.S.A. § 7553.  151 Vt. at 440, 563 A.2d at 263.  Under that standard, the State must establish "substantial, admissible evidence" that is legally sufficient to sustain a verdict of guilty on each element of the crime charged.  State v. Turnbaugh, 174 Vt. 532, 534, 811 A.2d 662, 665 (2002) (mem.).  In applying the Duff standard, we have explained that the State may establish the elements of the offense "by affidavits, depositions, sworn oral testimony, or other admissible evidence." State v. Blackmer, 160 Vt. 451, 454, 631 A.2d 1134, 1136 (1993) (quotation omitted).

¶ 7.    The admissibility requirement in Duff refers to admissibility of the evidence at trial. This depends on (1) whether the State has shown evidence that can fairly and reasonably convince a factfinder beyond a reasonable doubt that defendant is guilty, and (2) whether the State has shown this evidence will be admissible at trial.  Blackmer, 160 Vt. at 454, 631 A.2d at 1136.  Notably, we have explained that under the V.R.Cr.P. 12(d) standard, "[t]he State's burden is to demonstrate that it has evidence that will be admissible at trial, not to have it lawfully admitted at the hearing as if it were a trial"; thus, "the State is not required under this standard to actually present such evidence during the course of the § 7553 hearing."  State v. Bullock, 2017 VT 7, ¶ 8, __ Vt. __, 165 A.3d 145 (mem.) (explaining admissibility for purposes of trial differs from admissibility requirements for purpose of bail determination and admitting audio recording of alleged victim as sworn statement in weight of the evidence hearing).  We have held that affidavits are admissible evidence at bail hearings.  State v. Orost, 2017 VT 110, ¶ 8, __ Vt. __, 179 A.3d 763 (mem.);

<u>Turnbaugh</u>, 174 Vt. at 534, 811 A.2d at 665.  We have further held that a sworn interview is the functional equivalent of an affidavit, <u>State v. Bushey</u>, 2009 VT 12, ¶ 5, 185 Vt. 597, 969 A.2d 119 (mem.), and that sworn oral statements are admissible at weight of the evidence hearings.  <u>Bullock</u>, 2017 VT 7, ¶ 8.

¶ 8.     First, the defense argues that M.L.'s interview cannot function as an affidavit because M.L. did not affirm that his statements were true until the end of the interview.  In <u>State v. Bushey</u>, we permitted the court to base its finding that the evidence of defendant's guilt was great on a sworn interview from a witness even though the witness attested to the statement at the end of the interview rather than the beginning. 2009 VT 12, ¶ 5. We likened such a sworn oral statement to "a written affidavit attested to at the bottom of the statement." <u>Id</u>.  We come to the same conclusion here.  M.L.'s sworn interview was the functional equivalent of an affidavit: at the close of his statement, M.L. affirmed that all of his statements were true, and, like a written affidavit, the fact that M.L. attested to his statement at the end of the interview does not negate its admissibility.

¶ 9.     Second, the defense contends that, even if M.L.'s statement qualifies as an affidavit or sworn statement, M.L.'s interview still fails to meet the V.R.Cr.P. 12(d) standard because M.L. did not sufficiently indicate that he understood his obligation to tell the truth during the interview. We disagree; M.L.'s CFAC interview met the flexible standard required to obtain a sworn oral statement from a child witness and was therefore admissible at the weight of the evidence hearing.

¶ 10.    When dealing with a child of tender years, there is no fixed language by which an interviewer must ascertain the child's ability to provide a truthful statement. However, caselaw on the subject of child testimony and Rule 603 of the Vermont Rules of Evidence concerning child witnesses are instructive.  Although the Vermont Rules of Evidence are not applicable in a witness interview, such as the CFAC interview at issue here, the Reporter's Notes to Rule 603 advocate a "flexible" standard for obtaining an oath or affirmation from a child to "allow[] the court to deal in a direct way with . . . witnesses . . . of a young age." Reporter's Notes, V.R.E. 603.  In applying this flexible standard, the interviewer must ensure that the child (1) understands the difference between a truth and a lie, (2) is able to demonstrate that he or she can distinguish between the two, and (3) appreciates his or her obligation to tell the truth during the interview. See V.R.E. 603 (defining oath or affirmation); <u>Wheeler v. United States</u>, 159 U.S. 523, 525 (1895) (allowing five-year-old child to testify and explaining that "there is no precise or fixed rule as to the time within which infants are excluded from giving evidence, but their admissibility depends upon the sense and reason they entertain of the danger and impiety of falsehood" (quotation omitted)); <u>State v. Sampson</u>, 388 A.2d 60, 64 (Me. 1978) ("In relation to the child's comprehension of the truth and falsehood concepts, a young child's testimonial competency may be said to be sufficient, if the child appears to have capacity to understand in some measure, the obligation of an oath or, in practical conception, the capacity to realize that it is wrong to falsify and that if he does tell an untruth he is likely to be punished."); <u>Commonwealth v. Amirault</u>, 677 N.E.2d 652, 672 n.22 (Mass. 1997) (explaining that child witnesses who testified "did not take the usual oath, but were instead asked to make a promise of truthfulness which was within the children's understanding"); <u>State v. Bergquist</u>, No. 2016-022, 2016 WL 1032948, at *2 (Vt. Mar. 1, 2016) (unpub. mem.), https://www.vermontjudiciary.org/sites/default/files/documents/eo16-022.bail.pdf [https://perma.cc/V456-VFQZ] (explaining that interview with child must "contain[] statements by the victim . . .

3

that sufficiently approximate an oath" and interviewer's discussion of "rules" of interview satisfied standard). Chief Dumas met this burden in his interview with M.L.

¶ 11. At the weight of the evidence hearing, Chief Dumas explained that he employed the use of the forensic interview model when interviewing M.L., which is designed to elicit information from a child without the use of leading questions. During the interview, Chief Dumas ascertained that M.L. knew the difference between a truth and a lie and asked M.L. to demonstrate that he could distinguish between a truth and a lie by using a hypothetical scenario, which the child did successfully. After establishing M.L.'s capacity for truthfulness, Chief Dumas brought M.L. back to the topic of truthfulness again twice during the interview. At one point, when M.L. was beginning to describe the alleged abuse by defendant and struggling with using a particular word, Chief Dumas told M.L., "You can tell us anything you want <u>as long as it's the truth</u>. Okay? We just want the truth. Okay?" (Emphasis added.) M.L. gave a nonverbal response of some nature to this question, but the transcript does not indicate whether M.L affirmed that he understood and would comply. What the transcript makes clear, however, is that the child heard Chief Dumas's admonition that telling the truth was required. Finally, at the end of the interview, Officer Dumas had the following exchange with M.L.:

> Officer Dumas: Okay. I gotta ask you one more question.
>
> M.L.: Okay.
>
> Officer Dumas: It's really important. You gotta listen to me. Okay?
>
> M.L.: Okay.
>
> Officer Dumas: Everything we talked about today was it the truth?
>
> M.L.: Yes.

¶ 12. As in <u>Berquist</u>, Chief Dumas explained the "rules of the room" to M.L. when he told M.L. that the interviewers "just want[ed] the truth." No. 2016-022, 2016 WL 1032948, at *2. Chief Dumas made it clear that M.L. could say anything he wanted to, "as long as it's the truth." At the end of the interview, Chief Dumas ensured that M.L. had followed the rules by asking him whether "[e]verything we talked about today was it the truth?" Chief Dumas emphasized to M.L. that this question was "really important." M.L. affirmed that he had told the truth throughout the interview. These things, along with M.L.'s demonstrated ability to know and distinguish the difference between the truth and a lie were sufficient to impress upon M.L. the need to be truthful. Taken "in its entirety," M.L.'s guarantees of truthfulness are sufficient to constitute a sworn oral statement. <u>Bergquist</u>, No. 2016-022, 2016 WL 1032948, at *2 (considering interview in its entirety to determine whether child's oath was sufficient to constitute sworn oath or affirmation).

¶ 13. Under the <u>Duff</u> standard, the State does not bear the burden of proving that M.L.'s statement would be admissible <u>at trial</u> during the weight of the evidence hearing—at this stage, the State must merely demonstrate that this evidence falls into one of the categories of admissible evidence contemplated under the V.R.Cr.P. 12(d) standard outlined <u>Duff</u>—including affidavits and sworn statements. <u>Blackmer</u>, 160 Vt. at 454, 631 A.2d at 1136; <u>Bullock</u>, 2017 VT 7, ¶ 8. Because M.L.'s statement meets the flexible requirements for obtaining a sworn statement from a child, the

4

CFAC interview qualifies as a sworn statement and was properly considered as admissible evidence at the weight of the evidence hearing. Defendant does not contest that if the statement from M.L. were properly admitted at the weight of the evidence hearing then its content would be sufficient to satisfy the State's burden to produce evidence that can fairly and reasonably convince a factfinder beyond a reasonable doubt that defendant is guilty of the charged offense. Because M.L.'s interview statement was properly admitted at the bail hearing, the trial court was correct in its determination that the evidence of defendant's guilt was great.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

☒ Publish

_____
Beth Robinson, Associate Justice

☐ Do Not Publish

_____
Harold E. Eaton, Jr., Associate Justice

5