### State of Vermont v. Larry Sauve

[621 A.2d 1296]

Nos. 92-568 and 92-571

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed January 29, 1993

*E.M. Allen*, Defender General, and *William Nelson*, Appellate Defender, Montpelier, for Defendant-Appellant.

**Johnson, J.** In *State v. Sauve*, No. 92-457 (Oct. 22, 1992) (*Sauve I*), we reversed and remanded orders revoking defend-

ant's bail for violating conditions of release and denying him bail on new charges. These matters were reheard in two separate proceedings below. Defendant again appeals, asserting that his constitutional right to bail has been violated. We again reverse and remand.

Defendant and the complaining witness became acquainted in January 1992. In April 1992, they began an intimate relationship and lived together in her apartment. In May 1992, defendant choked the complaining witness during an argument. At about the same time, she discovered she was pregnant with their child; defendant was adamant that she not have an abortion.

On or about July 4, 1992, defendant and the complaining witness had an argument while they were driving his dog to the veterinarian. He struck her, but she never reported the incident to the police. On the same day, however, the police stopped defendant for driving the wrong way down a one-way street and charged him with two misdemeanors, driving under the influence and unlawful mischief. He was released on conditions, including that he abstain from alcohol. On December 29, 1992, these charges were dismissed with prejudice.

On August 4, 1992, the complaining witness filed for relief from abuse, and a restraining order was served on defendant, ordering him to stay away from her, her home, and her children. At that point, the witness had been discouraging defendant from continuing their relationship; defendant nonetheless wanted to pursue it and threatened to kill her if she obtained an abortion. On August 6, 1992, defendant was charged with burglary, unlawful mischief, and trespass for allegedly having entered the complaining witness's residence. Defendant was released on additional conditions, including that he not associate with nor harass the complaining witness, nor enter her premises without being accompanied by a police officer.

After the court imposed the no-contact condition, defendant continued to contact the complaining witness and remained intimate with her. She had a couch on her back porch and, because he was homeless, she occasionally allowed him to sleep there. On September 11, 1992, she was awakened in the early hours of the morning by defendant at her door asking to sleep on the porch. She told him to leave and, when he refused, she called

the police. He was charged with trespassing and violating two of his conditions of release: being charged with trespass, an offense similar to the August 6 charge, and purchasing or consuming alcoholic beverages.

On September 11, 1992, the court ordered defendant held without bail on both the new charges and the two earlier sets of charges because of violations of conditions. On September 17, 1992, defendant's motion for bail review was heard and denied on the grounds that defendant would not comply with the conditions of release, in particular that he would not obey the condition that he stay away from the complaining witness. Both rulings were based on the court's files and at neither hearing was live testimony of witnesses presented.

Both rulings were appealed to, and reversed and remanded by, this Court. On remand, they were heard in separate hearings, this time with live testimony by both defendant and the complaining witness. Defendant was again denied bail on the new charges and had his bail revoked for the old charges.

## I. Denial of Bail

■ Defendant argues that denial of bail on the new charges violated his statutory and constitutional right to bail. We agree that the denial of bail violated 13 V.S.A. § 7554(a)(2)(C) and do not, therefore, reach the constitutional issue. The trial court found that defendant had a history of "assaultive threats" and "assault or abusive behavior" toward the complaining witness and that, despite conditions of release on prior charges, "he was not able to leave her alone." The court found that on September 11, 1992, defendant had appeared on her porch, and had a conversation with her in the middle of the night, and stated it "assum[ed] although I don't believe she testified to it, that that is a frightening experience for her." Nonetheless, the witness testified against defendant in this proceeding and expressed no fear of him. The court's findings fall far short of supporting its conclusion that "extraordinary circumstances" required "physically restrictive conditions" to protect the community and the alleged victim. 13 V.S.A. § 7554(a)(2)(C).

## II. Revocation of Bail

Defendant also asserts that revoking his bail violated his right to bail under chapter II, § 40 of the Vermont Constitution. The trial court concluded revocation was warranted under three separate prongs of 13 V.S.A. § 7575. It stated that on September 11, defendant intimidated and harassed the complaining witness, 13 V.S.A. § 7575(1), that defendant had repeatedly violated conditions of release, 13 V.S.A. § 7575(2), and that defendant's actions of September 11 had threatened the integrity of the judicial system, 13 V.S.A. § 7575(3). The trial court held that a breach of conditions alone was sufficient to hold defendant without bail and urged this Court to overrule *State v. Fales*, 157 Vt. 652, 653, 599 A.2d 1046, 1047 (1991) (verbal and physical battering of complaining witness too attenuated from integrity of criminal proceedings to justify denial of bail), stating that § 7575 does not require "that defendant's breach of conditions be the proximate cause of witness reluctance to testify."

The central issue raised by this appeal is the meaning of 13 V.S.A. § 7575: whether and under what circumstances the statute allows for preventive detention, that is, imprisoning accused but unconvicted defendants because they may endanger the public. This is not merely a matter of legislative intent. What threatens the integrity of the judicial process is a question of constitutional dimension. Likewise, although § 7575(2) appears on its face to allow revocation merely on a finding of repeated violations of conditions, this provision must be construed in light of our constitutional provision on bail. *In re Certain Juvenile*, 129 Vt. 185, 189, 274 A.2d 506, 509 (1970) (Court must avoid giving statute a meaning that would render it unconstitutional).

■ We share the trial court's concern for victims of crime and public safety, but our decision today must be guided by our constitution. Its bail provision, chapter II, § 40, provides in relevant part:

Excessive bail shall not be enacted for bailable offenses. All persons, unless sentenced, or unless committed for offenses punishable by death or life imprisonment when the evidence of guilt is great, shall be bailable by sufficient sureties. Persons committed for offenses punishable by

death or life imprisonment, when the evidence of guilt is great, shall not be bailable as a matter of right.

In contrast, the federal guarantee is much more limited, providing only that "[e]xcessive bail shall not be required." U.S. Const. Amend. VIII; see also *United States v. Salerno*, 481 U.S. 739, 754 (1987) (Eighth Amendment does not accord a right to bail in all cases; rather its "only arguable substantive limitation" is that "conditions of release or detention not be 'excessive' in light of the perceived evil"). The extra language in our bail statute is not mere surplusage. Rather, it explicitly guarantees bail as a matter of right to defendants not charged with offenses punishable by death or life imprisonment. Charges against defendant here — unlawful mischief, burglary, trespass — are not sufficient to deny him his fundamental right to bail.

In so interpreting chapter II, § 40, we do not write on a blank slate; some historical background is necessary. In *State v. Pray*, 133 Vt. 537, 346 A.2d 227 (1975), this Court analyzed as a matter of first impression the constitutionality of pretrial preventive detention under the bail provision prior to its 1982 amendment. That case addressed denial of bail to two prisoners on grounds that they constituted a danger to the public; one was charged with rape, the other was awaiting retrial after his first-degree-murder conviction was overturned. At the time, the predecessor provision to chapter II, § 40 mandated that "All prisoners, unless in execution or committed for capital offenses, when the proof is evident or presumption great, shall be bailable by sufficient sureties." This Court held that "nothing [in this section] provides for denial of bail because of a defendant's dangerous propensities," and consequently, that all prisoners, except those charged with capital crimes, were bailable as a matter of right. *Pray*, 133 Vt. at 541, 346 A.2d at 229. This result was "not only mandated by our own constitutional provisions, but is also in line with other jurisdictions which have interpreted similar constitutional provisions and legislative enactments." *Id.* Finally, the Court stated that if this constitutional guarantee was bad policy, "it is up to the people to effect change, since the right to amend the constitution rests solely with the electorate." *Id.* at 542, 346 A.2d at 230.

In 1982, public safety concerns resulted in a rewriting of the bail provision. The reference to capital crimes was removed,

and now those accused of committing crimes punishable by life imprisonment are no longer afforded bail as a matter of right. Those accused of crimes punishable by less than life imprisonment, however, are still afforded the same unqualified right to bail, in virtually identical language as under the prior bail provision: "[a]ll persons, unless sentenced, or unless committed for offenses punishable by death or life imprisonment . . . *shall be bailable by sufficient sureties*." (Emphasis added.)

The legislative history of the bail amendment reveals that many bail reform proponents were concerned that the amendment did not go far enough. The legislators were aware that those accused of rape, for example, would not be covered by the bail amendment because rape was not then punishable by life imprisonment. See Hearings on Proposal H Before the House Judiciary Committee, Bien. Sess., Jan. 7, 1982, at 6–7 (testimony of Vermont District Court Judge Edward Costello). John Easton, then Vermont's attorney general, elaborated on this theme, pointing out that only four crimes were punishable by death and only five by life imprisonment, and that even aggravated sexual assault would not be covered. *Id.* at 19–20.

Easton's main opposition to the amendment, however, was that it did not "provide for the consideration of . . . an accused offender's danger to the community." *Id.* at 19. Citing *Pray*, *State v. Cyr*, 134 Vt. 460, 365 A.2d 969 (1976), and *State v. Mecier*, 136 Vt. 336, 388 A.2d 435 (1978), Easton explained that this Court had consistently construed the constitution as forbidding pretrial preventive detention and that the proposed amendment did nothing to change this prohibition. *Id.* at 21. He urged the committee to reject Proposal H (the version which ultimately passed and is now chapter II, § 40), and instead to adopt an amendment that specifically allowed a defendant's dangerousness to be considered. As models he pointed to the revised ABA Standards on Pretrial Detention and to the recently enacted District of Columbia bail statute. *Id.* at 21–22. This stronger approach was, however, rejected.

A new bail amendment was introduced and passed by the Legislature in the 1991 biennium. See Proposal 7. It will be considered again in 1993, and, if a majority of both houses concur, will be set for popular vote. See Vt. Const. ch. II, § 72. Proposal 7 would allow judges to deny bail to those charged with felonies

involving violence if the accused's release poses a "substantial threat of physical violence to any person" and no conditions of release "will reasonably prevent the physical violence." Senator Bloomer, the chair of the Senate Judiciary Committee, describing the proposal, recognized that "[t]his concept, to allow persons to be held for purposes of public safety, is a new concept for this state." Journal of the Senate at 402 (April 1, 1992) (remarks of Senator John Bloomer). Unless this new concept is enacted, we must continue to evaluate bail statutes as mandated by chapter II, § 40, and as discussed in our prior cases.

Section 7575 of Title 13, enacted in 1990, after the bail amendment went into effect, obviously attempted to address the same concerns. It provides that "[t]he right to bail may be revoked entirely" if a court finds that a defendant has:

(1) intimidated or harassed a victim, potential witness, juror or judicial officer in violation of a condition of release; or

(2) repeatedly violated conditions of release; or

(3) violated a condition or conditions of release which constitute a threat to the integrity of the judicial system; or

(4) without just cause failed to appear at a specified time and place ordered by a judicial officer; or

(5) in violation of a condition of release, been charged with a felony or a crime against a person or an offense like the underlying charge, for which, after hearing, probable cause is found.

The trial court based its conclusions on subsections 1 through 3; the issue is whether it interpreted these in a constitutional manner.

We have previously recognized the constitutional necessity of protecting our citizens from pretrial detention, which undermines the presumption of innocence by "depriv[ing] a defendant of a fundamental value, the right to liberty, without an adjudication of guilt." *State v. Duff*, 151 Vt. 433, 440, 563 A.2d 258, 263 (1989). Our constitutional values require that liberty is and must remain the norm and "'detention prior to trial or without trial is the carefully limited exception.'" *Id.* (quoting *Salerno*, 481 U.S. at 755). Although some exceptions may exist to the right to bail, these are limited to "'special circum-

stances'" where the state's interest is "'legitimate and compelling.'" *Id.* (quoting *Salerno*, 481 U.S. at 749).

Traditionally, the sole exception to the right to bail was made when the accused posed a risk of flight. See Cogan, *The Pennsylvania Bail Provisions: The Legality of Preventive Detention*, 44 Temp. L.Q. 51, 72 (1970). Bail provisions, like Vermont's original bail clause, used capital crimes as a surrogate for a high risk of flight on the grounds that those facing the death penalty would have the highest incentive to leave the jurisdiction. The reason for the risk-of-flight exception was that, without the presence of the accused, the prosecution could not go forward and the state would be denied its opportunity to seek justice. On the same rationale, the exception has been expanded to provide bail revocation as a remedy for other palpable threats to the judicial process, e.g., when evidence would be destroyed or witnesses would be intimidated or endangered. See, e.g., *State v. Mecier*, 136 Vt. at 339, 388 A.2d at 438 (breaches of release conditions "threatening the integrity of the judicial process" may justify bail revocation). Preventive detention, on the other hand, was never an acceptable reason to deny bail. See Cogan, *supra*, at 72 (concluding that "dangerousness as a determinant was and is antithetical to the reasons for the bail clauses").

■ Subsections (1) and (3) of § 7575 — providing for revocation of bail if defendant intimidates or harasses a victim or witness or violates a condition of release which constitutes a threat to the integrity of the judicial system — are both consistent with these traditional concerns. They are based on the compelling state interest in prosecuting those accused of violating its laws.

■ The court's findings, however, are insufficient to support revocation under § 7575(1) or (3). With regard to § 7575(1), the court did not find that the complaining witness was harassed and intimidated; it found only that she was "in danger of contact by the defendant." With regard to § 7575(3), the court found that "the integrity of the judicial system is threatened any time a potential witness refuses to testify out of fear of reprisal." Yet, the court made no finding that the complaining witness here refused to testify (she did in fact testify at the bail revocation hearing) or that she feared reprisal.

■■ The court also found that defendant violated two conditions of bail on September 11: condition 3 (that he "shall not be charged with . . . an offense like the offense he . . . is now charged with) by being charged with trespass, which he had previously been charged with on August 6, and condition 12 (that he shall not consume alcohol).* The bare language of § 7575(2), providing revocation for "repeatedly violated conditions of release," however, without more, does not rise to the level of a compelling interest. Merely because a defendant has violated, even repeatedly violated, court orders does not show that the judicial process is endangered. Some defendants will violate conditions of release by continuing to use drugs or alcohol. Their addictions may render them uncooperative and may contribute to their failure to meet conditions. Addictive behavior will make these defendants special challenges to the justice system but will not necessarily threaten justice. Addictive behavior may also make them potentially dangerous. Nevertheless, preventive detention of the potentially dangerous is not now constitutionally acceptable.

■ Likewise, a person may repeatedly violate court orders and commit crimes similar to that with which they are charged. Such flagrant disregard of conditions may show disrespect for the judicial system, but these violations do not necessarily threaten the integrity of the judicial system, in the constitutionally limited sense that they thwart the prosecution of the defendant. Moreover, courts are not without recourse in dealing with those who persistently violate conditions. Proper tools include imposition of more stringent terms of release and initiation of contempt proceedings. The one sanction not available to

---

* The no-alcohol condition was imposed when defendant was released on the first set of charges—driving under the influence and unlawful mischief. These charges were subsequently dismissed with prejudice, rendering moot that part of the bail revocation appeal arising from those charges. That appeal nonetheless remains alive because defendant's bail was also revoked on the second set of charges—burglary, unlawful mischief, and trespass.

Defendant asserts that any reliance the trial court placed on the allegations made in the dismissed case should be "negated." The parties were invited to brief this issue but declined to do so. Because we hold that violating a no-alcohol condition is insufficient to revoke bail under 13 V.S.A. § 7575(2), we need not decide the legal effect of violations of conditions of release when the charges giving rise to those conditions are dismissed.

the court, however, is withholding defendant's constitutional right to bail. To justify a compelling state interest and thereby render § 7575(2) constitutional, there must be a nexus between defendant's repeated violations and a disruption of the prosecution.

In this case no nexus was shown. Defendant was charged with burglary, unlawful mischief, and trespass for allegedly entering the complaining witness's residence. The court found that the complaining witness continued to carry on an intimate relationship with defendant after conditions had been imposed to keep him from contacting her. Defendant had reason to believe that she would allow him into her house or at least to let him remain on her porch in spite of the order. We acknowledge that there will be cases where a victim of abuse will be forced to continue contact with an abuser, and, within the confines of an intimate relationship, physical and psychological pressures may be brought to bear to stop the complaining witness from testifying. The trial court findings simply do not support a conclusion that that occurred in this case.

Defendant was never charged with abuse; he was not charged with assaulting or threatening the witness. The court found that on one occasion defendant choked the complaining witness and on another occasion he threatened to kill her if she obtained an abortion. Both of these incidents, however, preceded the setting of release conditions. No evidence was presented and no findings made that defendant threatened or assaulted the complaining witness during the relevant time period. No evidence was presented that defendant was attempting to intimidate her; no finding was made that he had intimidated her or that she feared testifying against him. She did, in fact, testify against him at both hearings.

Because no nexus was found, this portion of the appeal will be remanded for the court to consider appropriate bail and conditions of release.

### III. Standard of Review

■ Finally, in *Sauve I*, the trial court was ordered on remand to use a higher standard of review than probable cause in determining whether defendant violated any bail conditions. It has failed to identify what standard it used, stating only that it

found violations "by a far greater standard than mere probable cause." We now hold that in order to have bail revoked, the State must prove that defendant violated conditions of release by a preponderance of the evidence.

We have previously held that probable cause was insufficient to hold without bail defendants accused of crimes punishable by life imprisonment. Instead, we required the prosecution to show by "substantial admissible evidence" a prima facie case that defendant is guilty. *State v. Passino*, 154 Vt. 377, 382, 577 A.2d 281, 285 (1990); *Duff*, 151 Vt. at 440, 563 A.2d at 263. Thus, before the State can deprive defendants of their fundamental right to liberty without an adjudication of guilt, it "must show that facts exist that are legally sufficient to sustain a verdict of guilty." *Duff*, 151 Vt. at 440, 563 A.2d at 263. This standard, however, is insufficient to protect defendants accused of violations of conditions of bail, which may be based on less-than-criminal behavior, e.g., purchasing or consuming alcoholic beverages.

Instead, findings that bail conditions have been violated must be made by a preponderance of the evidence. We have previously held that findings for a § 7575 revocation must be based on more than affidavits and sworn statements; rather, defendant must have a hearing with an opportunity to present evidence. *State v. Huseboe*, 158 Vt. 651, 652, 607 A.2d 1140, 1140–41 (1992). Thus, the court must look, not just at the strength of the State's case, but also at contrary evidence, and is required to exercise its discretion by weighing the evidence. The preponderance standard best protects both the accused and the fact-finding process. Of course, if the behavior resulting in a condition violation is criminal, the accused may be charged separately for that conduct and the same conduct may be evaluated under the prima facie standard.

*Reversed and remanded for the court to set appropriate bail and conditions in docket nos. 855-8-92WmCr and 987-9-92WmCr.*