**RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1836-16T6

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

JAMANTAY GAINES,

    Defendant-Appellant.

_____

Argued February 14, 2017 — Decided  March 1, 2017

Before Judges Messano, Espinosa and Suter.

On appeal from the Superior Court of New
Jersey, Law Division, Hudson County, Docket
No. W-2017-000042-0906.

Joseph E. Krakora, Public Defender, argued the
cause for appellant (Joseph E. Krakora, Public
Defender, attorney; Katie Kronick, Assistant
Deputy Public Defender, of counsel and on the
brief).

Stephanie Davis Elson, Assistant Prosecutor,
argued the cause for respondent (Esther
Suarez, Hudson County Prosecutor, attorney;
Ms. Elson, on the brief).

Claudia Joy Demitro, Deputy Attorney General,
argued the cause for amicus curiae Office of
the Attorney General (Christopher S. Porrino,

Attorney General, attorney; Ms. Demitro, on the brief).

Alexander Shalom argued the cause for amicus curiae American Civil Liberties Union of New Jersey (American Civil Liberties Union of New Jersey, attorneys; Mr. Shalom, Edward L. Barocas and Jeanne LoCicero, on the brief).

PER CURIAM

Defendant Jamantay Gaines appeals from the Law Division's January 9, 2017 order that granted the State's motion to detain him pretrial pursuant to the Bail Reform Act (the Act), N.J.S.A. 2A:162-15 to -26. Defendant was arrested in Jersey City and charged in a complaint-warrant with second-degree possession of a firearm for an unlawful purpose, N.J.S.A. 2C:39-4(a)(1), and second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b)(1).

At the hearing held before Judge Paul M. DePascale on January 9, 2017, the State sought to introduce the complaint-warrant, the affidavit of probable cause that supported it, the Preliminary Law Enforcement Incident Report, the Public Safety Assessment (PSA) and defendant's criminal history and history of juvenile adjudications. Taken collectively, these documents demonstrated Police Officer Mike Meade and another officer observed defendant in possession of a 9mm. handgun and "seized/recovered" the weapon.

Defendant's score on the PSA's "Failure to Appear" and "New Criminal Activity" risk scales was four. There was no "New Violent Criminal Activity" flag. Defendant, who was nineteen-years old, faced pending charges for other firearm offenses and criminal trespass, as well as the disorderly persons offense of obstruction, from a December 2016 arrest. He had also failed to appear in court on one occasion within the past two years. The PSA also listed defendant's juvenile record, which included juvenile delinquency adjudications beginning in 2011 for theft, unlawful possession of a handgun, possession of a controlled dangerous substance (CDS), simple assault and violations of probation.[1] The recommendation in the PSA was for defendant's release with bi-weekly reporting.

Defense counsel objected to Judge DePascale proceeding without the State producing a "live witness" to establish probable cause. Counsel cited Rule 3:4-3(a), which permits a pre-indictment hearing to determine probable cause at which the judge "shall hear evidence . . . and the defendant may cross-examine witnesses

---

[1] The PSA does not account for a defendant's juvenile justice history in assessing the risks for failure to appear or new criminal activity. The New Jersey Courts website, http://www.judiciary.state.nj.us/criminal/cjr/PSP.pdf, provides a link to the "PSA Risk Factors and Formula" webpage of the Laura and John Arnold Foundation, which lists the nine risk factors considered by the PSA.

offered by the State." She sought to distinguish federal precedent decided under the analogous Bail Reform Act of 1984, 18 U.S.C.A. § 3141 to § 3150 (the Federal Act), and cited her own personal experience appearing in the District of Columbia Court representing defendants under a statute similar to the Federal Act. She noted judges in the District of Columbia "require[] that a live witness come forward and provide testimony . . . ." Defense counsel also relied upon a New Hampshire decision, which we discuss in more detail below.

After Judge DePascale rejected the argument and admitted the documents, defense counsel contended the State's proffer failed to establish probable cause. The judge partially agreed and concluded the State had established probable cause only for the unlawful possession charge.

Defense counsel urged Judge DePascale to adopt the recommendation of Pretrial Services and release defendant with conditions. She cited defendant's age, lack of an adult criminal record, family support and ties to the community, and argued defendant should be placed on "home arrest" with a "GPS monitor" to minimize any risk to public safety or of defendant's failure to appear.

In a comprehensive oral opinion, Judge DePascale noted defendant's "multiple adjudications of delinquency that span over

[five] years," that defendant was unemployed, had a "drug history" and "a record of failing to appear." Judge DePascale further found that although defendant may "have a support system," it had not "been sufficient to supervise him adequately in the past." The judge noted defendant's pending charge for firearms offenses that occurred less than one month before this arrest. He found that even with home detention as a condition, pretrial release "would place the safety of the community at risk" given defendant's "demonstrated . . . propensity for the quick acquisition of handguns and a longstanding disregard for [c]ourt supervision."

In the order we review, Judge DePascale found the State had demonstrated by clear and convincing evidence that "no amount of monetary bail, non-monetary conditions or combination" or both "would reasonably assure[] the protection of the safety of any other person or the community." N.J.S.A. 2A:162-19(e)(3). He made specific findings regarding the statutory factors set forth in the Act. See N.J.S.A. 2A:162-20(a)—(f).

Defendant filed this appeal as of right. N.J.S.A. 2A:162-18(c); R. 2:9-13(a). Thereafter, we granted motions filed by the Attorney General and the American Civil Liberties Union (ACLU) to appear as amici.

Defendant argues that permitting the State to proceed entirely by proffer violated his right to due process. He contends

that the Act and our Court Rules "require live testimony to establish probable cause." Defendant also relies on case law from other jurisdictions to support this contention. Additionally, defendant argues the State failed to establish probable cause or meet its burden of proof justifying pretrial detention under the Act. The ACLU submits that permitting the State to proceed without a live witness violates due process.

The State counters by arguing due process does not require the production of a live witness at the detention hearing, a conclusion supported by significant precedent from other jurisdictions. The State further contends it established probable cause at the hearing and demonstrated, by clear and convincing evidence, grounds for defendant's pretrial detention. The Attorney General submits the Act, Court Rules and federal precedent make clear that the State may proceed by proffer alone.

Having considered these contentions and the arguments of counsel, we affirm.

We have, this day, filed our opinion in State v. Ingram, ___ N.J. Super. ___ (App. Div. 2017), which specifically addresses defendant's claims that permitting the State to proceed at a pretrial detention hearing solely by proffer violates due process and the Act. We not need repeat our analysis here, but rather

address only the additional arguments this defendant has specifically raised.

Defendant cites case law from Vermont and New Hampshire in support of his contentions. In State v. Brooks, 196 Vt. 604, 605 (2002), the court affirmed revocation of the defendant's bail based upon live testimony and sworn statements. Citing its earlier decision in State v. Sauve, 621 A.2d 1296 (Vt. 1993), the Supreme Court of Vermont held that a bail revocation hearing "must be based on more than affidavits and sworn statements." Ibid.

However, Vermont law, permitting revocation of bail in certain circumstances, is distinctly different from the Act and the Federal Act. The Vermont Constitution guarantees a right to bail, except for (1) "offenses punishable by death or life imprisonment when the evidence of guilt is great," or (2) for felonies involving violence "when the evidence of guilt is great" and release "poses a substantial threat of physical violence" that conditions would not prevent. Sauve, supra, 621 A.2d at 1299 (quoting Vt. Const., ch. II, § 40);[2] see also State v. Gates, 145

_____

[2] Similarly, our constitution previously provided "[a]ll persons shall, before conviction, be bailable by sufficient sureties, except for capital offenses when the proof is evident or presumption great." N.J. Const., art. I, § 11 (2016). However, effective January 1, 2017, our constitution was amended to remove the right to bail and now provides:

<u>A.</u>3d 233, 236 (Vt. 2016) ("[E]xcept in 'very limited and special circumstances where the State's interest is legitimate and compelling, a court may not deny bail in the face of the constitutional right.'" (quoting <u>State v. Blackmer</u>, 631 <u>A.</u>2d 1134, 1137 (Vt. 1993))). Thus, in order to revoke a defendant's bail in Vermont, the prosecutor must establish much more than probable cause; he or she must establish that "the evidence of guilt is great," and, in some cases, that release poses "a substantial threat of physical violence."

Defendant also cites <u>State v. Poulicakos</u>, 559 <u>A.</u>2d 1341 (N.H. 1989). There, the State sought the defendant's detention on a murder charge by proffering certain evidence and calling a police

---

> All persons shall, before conviction, be eligible for pretrial release. Pretrial release may be denied to a person if the court finds that no amount of monetary bail, non-monetary conditions of pretrial release, or combination of monetary bail and non-monetary conditions would reasonably assure the person's appearance in court when required, or protect the safety of any other person or the community, or prevent the person from obstructing or attempting to obstruct the criminal justice process. It shall be lawful for the Legislature to establish by law procedures, terms, and conditions applicable to pretrial release and the denial thereof authorized under this provision.
>
> [<u>N.J. Const.</u>, art. I, § 11.]

captain who led the investigation as a witness. Id. at 1342. The defendant objected, arguing that "permitting the State to present evidence . . . by offer of proof, without presenting any witnesses, violated his right of confrontation under the State Constitution." Ibid. Interpreting a pretrial detention statute similar to the Act, the Supreme Court of New Hampshire held that "the State may proceed by offer of proof so long as it supplies a witness or witnesses who can make meaningful the defendant's right to cross-examination." Id. at 1341. The Poulicakos court noted, however, that the Federal Act had "identical language" to the now-repealed New Hampshire statute, RSA 597:6-a, VII (Supp. 1988), and that federal courts "have permitted the government to proceed by proffer and have not required live witnesses." Id. at 1343. The court stated:

> We hold that under RSA 597:6-a, VII (Supp. 1988), as under the federal law, the government may proceed by proffer. If the defendant raises questions about the accuracy of the State's proffer, the court can require the prosecution to present witnesses to buttress its offer of proof.
>
> [Ibid. (emphasis added).]

The court also stated a defendant's statutory right "to cross-examine witnesses who appear at the hearing" requires the State to "supply a witness or witnesses capable of being effectively cross-examined." Ibid.

A-1836-16T6

However, we construe this part of the court's holding as limited only to those situations in which the State actually produces a witness at the hearing. As the court explained at the conclusion of the decision:

> The defendant's right to cross-examination at the detention hearing, guaranteed by statute as well as by the due process clause . . .is satisfied by the State's supplying a knowledgeable witness who can be cross-examined effectively.
>
> The right to confront adverse witnesses face-to-face, as separate from the right to cross-examination, is not absolute in pre-trial proceedings. The defendant's right to confrontation is satisfied by his opportunity for cross-examination and by his opportunity to raise questions about the accuracy of the State's proffer in his own offer of proof or through his own witnesses, inducing the court to require the State to produce witnesses supporting its proffer.

[Id. at 1344.]

While the exact contours of the holding in Poulicakos may be subject to debate, it suffices to say that against the overwhelming federal precedent we cited in Ingram, supra, slip op. at 21-24, the New Hampshire decision lacks any persuasive authority.

Additionally, as noted, defense counsel cited her personal experience in the District of Columbia courts as indicative of the State's obligation to call a live witness at every detention hearing. On appeal, counsel filed a certification repeating her

assertion and arguing the State must produce a live witness. However, defendant's brief acknowledges case law from the District of Columbia "does not require a live witness." <u>See</u> <u>United States</u> <u>v. Edwards</u>, 430 <u>A.</u>2d 1321, 1337 (D.C. 1981) (en banc) ("The information presented to the judicial officer <u>by either the</u> <u>government or the defense may be by proffer</u> and 'need not conform to the rules pertaining to the admissibility of evidence in a court of law.'" (emphasis added) (citing <u>D.C. Code 1973</u>, § 23-13322(c))), <u>cert. denied</u>, 455 <u>U.S.</u> 1022, 102 <u>S. Ct.</u> 1721, 72 <u>L. Ed.</u> 2d 141 (1982). We find defendant's argument unpersuasive.

Defendant further argues that the State's proffer failed to establish probable cause, because the documents failed to state <u>where</u> defendant possessed the handgun. Defendant asserted that possession of the gun in his home or place of business would not be unlawful. <u>N.J.S.A.</u> 2C:39-6(e). However, Judge DePascale rejected this assertion, noting there was no evidence or proffer by the defense contradicting the documents, which charged defendant with <u>unlawful</u> possession in the presence of the officers. We reject defendant's claim that in this regard, the judge shifted the burden of proof from the State.

Last, defendant argues the State failed to prove by clear and convincing evidence grounds for his detention. As we noted in <u>Ingram</u>, <u>supra</u>, ___ <u>N.J. Super.</u> ____ (slip op. at 36-37), the Act

11

does not set forth the controlling standard for appellate review of the Law Division's order, and the federal circuit courts have seemingly split on the issue. In this case, the State argues the appropriate standard is whether Judge DePascale mistakenly exercised his discretion. At oral argument, defendant acknowledged that most likely was the appropriate standard.

We need not resolve the issue. It suffices to say we are persuaded that, for all the reasons found by Judge DePascale, as incorporated in his oral decision and detailed conforming order, the State clearly and convincingly demonstrated grounds for defendant's pretrial detention.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1836-16T6