SKOGLUND, J., dissenting.
¶ 22. Because the trial court decision does not comply with the amended statutes governing the imposition of bail, I would reverse. This Court has often acknowledged the understanding that Vermont "constitutional values require that liberty is and must remain the norm and detention prior to trial ... is the carefully limited exception." State v. Sauve, 159 Vt. 566, 573, 621 A.2d 1296, 1301 (1993) (quotation omitted). Our Constitution explicitly guarantees bail as a matter of right to people not charged with offenses punishable by death or life imprisonment. Vt. Const. ch. II, § 40 ("Excessive bail shall not be exacted for bailable offenses. All persons shall be bailable by sufficient sureties, except [three specific conditions]."). We have opined that "[o]ne of the laudable purposes of the bail [statutes] is to avoid the deliberate use of an unattainable bail figure to accomplish a restraint for the protection of the community, since restraint is ... possible under authorized conditions set out in" the statutes. State v. Roessell, 132 Vt. 634, 636, 328 A.2d 118, 119 (1974) (per curiam). And, yet, courts continue to routinely impose bail as part of the conditions on release set for the accused. This does not serve the liberty rights at issue or the critical consideration of freedom before conviction. Last year in 2018, the Legislature attempted, once again, to inform the question of when and why bail should be required when a person is charged with a crime. 2017, No. 164 (Adj. Sess.), §§ 1-8.[8]
¶ 23. The Legislature passed and the Governor signed into law Act 164, "[a]n act relating to bail reform," through which the Legislature tried to make very clear that incarceration for failure to meet bail should not be the norm. Section 3 of Act 164, which amended 13 V.S.A. § 7554(a)(1), specified that the accused "shall be ordered released on personal recognizance or upon the execution of an unsecured appearance bond ... unless the judicial officer determines that such a release will not reasonably mitigate the risk of flight from prosecution." (Emphasis added.) Prior to this amendment, judges were to assess whether bail was necessary to "ensure the appearance of the person" at future proceedings. Now, instead, a judge must decide if conditions are needed to lessen the risk that the accused may attempt to flee from prosecution. "Flight from prosecution," under the new law, "means any action or behavior undertaken by a person *608 charged with a criminal offense to avoid court proceedings." 13 V.S.A. § 7576(9). I understand this new language as a requirement that a judge must identify specific behaviors that demonstrate attempts to hide out, flee the jurisdiction, escape from custody, or some action that is specifically designed to avoid prosecution.
¶ 24. In State v. Toomey, we spoke of the factors to be taken into account when determining bail and listed the following:
(1) ability of the accused to give bail, (2) nature of the offense, (3) penalty for the offense charged, (4) character and reputation of the accused, (5) health of the accused, (6) character and strength of the evidence, (7) probability of the accused appearing at trial, (8) forfeiture of other bonds, and (9) whether the accused was a fugitive from justice when arrested.
126 Vt. 123, 125, 223 A.2d 473, 475 (1966). So, fifty years ago the factors to be considered were strikingly similar to those of today with the additional item of being a fugitive from justice. In an attempt to end the routine use of monetary bail, and in consideration of the explosion of incarceration rates, I suggest the bail reform legislation is intended to stop the pervasive automatic imposition of bail on every accused[9] that appears before the court. The new language imposes a requirement that a judge identify behavior that demonstrates an intent to avoid prosecution before they can decide that release on personal recognizance or under an unsecured appearance bond is not sufficient and impose bail. Only when evidence of such intent is shown should bail be imposed.
¶ 25. In this case, the State argued that the fact Mr. Rougeau's family members were ready and willing to post bail actually supported the imposition of bail.[10] That logic escapes me. The State argued that the definition of "risk of flight" meant "any behavior to avoid prosecution ... it is some intent of not being here," and it posited that Mr. Rougeau had "made it clear that he did not want to be prosecuted and that's why we charged him with interference with access to emergency services. That's why he said that the police were going to kill him." Thus, according to the State, because Mr. Rougeau allegedly disconnected the initial call to emergency services, bail was needed to mitigate the risk he would avoid prosecution. Thus, according to the State, the fact that Mr. Rougeau feared the police were going to kill him supported the imposition of bail to mitigate the risk he would avoid prosecution. Again, my search for logic in those arguments proves futile.
¶ 26. The officer's affidavit reveals a man that was very intoxicated on the night of the incident and who didn't want to be arrested, sure. But how is that evidence that he will attempt to avoid court proceedings? Then the State argued Mr. Rougeau was suicidal and homicidal. "This was anger." Maybe. It was also the raving of a drunk man. That does not equate to any behavior or action on the part of Mr. Rougeau that showed an intent at some future time to avoid prosecution.
*609 ¶ 27. Finally, the State argued that bail was required due to Mr. Rougeau's criminal record, including one failure to appear at a court proceeding in 2003. However, his prior involvement with the criminal justice system was long ago, did not involve violent offenses, and, as his attorney noted, he successfully completed probation.
¶ 28. This Court's review of bail determinations is quite limited. We must affirm an order imposing bail "if it is supported by the proceedings below." 13 V.S.A. 7556(b). In this case, the proceedings below do not support the imposition of bail. There were no facts supporting a risk of flight from prosecution. Thus, the court's exercise of discretion cannot be sustained.
¶ 29. At the hearing on Mr. Rougeau's motion to review bail, the court began by discussing the allegations of the crime-the use of a weapon and risk to others. The court acknowledged that Mr. Rougeau had significant ties to Bennington County, having been born and raised there, "which mitigate his risk of flight from prosecution." Also in Mr. Rougeau's favor was the fact that he had worked for one employer for thirteen years. Then the court found Mr. Rougeau's behavior on the night of the incident put several people at risk of harm; that his mental condition on that night was unstable. The court made no finding on Mr. Rougeau's character and noted the one failure to appear from fifteen years earlier. The court recognized the new bail statute's emphasis on consideration of defendant's financial means but refused to review the public-defender affidavit as evidence. He acknowledged the new statute required "an affirmative risk of flight," but then failed to offer any explanation of how the facts established at the hearing supported the need for bail to mitigate a risk of flight to avoid a court proceeding.
¶ 30. His final words reveal his failure to use the new statute:
[T]he overriding issue in this case is the seriousness of the offense and the facts and circumstances of the offense and the situation that occurred on that evening start to finish. Not just how it ended, but how it even began and how the police officers got involved with it and the like, all do create a risk of flight from prosecution.
How the situation began and how it ended were, apparently, infused with alcohol, which excuses nothing, but is only information of what took place. At a bail-review hearing, the questions are who is the accused standing before the court and will they stick around for trial? The behavior of an accused at the time of arrest is one thing, but is it behavior that shows the accused will attempt to avoid court proceedings? And the seriousness of an offense, alone, cannot be sufficient under the new statute to trigger the need for bail.
¶ 31. Here, the court simply approached the question of bail as if the new statute did not exist. Yes, holding Mr. Rougeau on a bail amount that cannot be met will "mitigate" the risk of flight, but that is exactly the practice the Legislature wanted to stop. Section 7554(a)(1) requires a finding that release on personal recognizance or unsecured appearance bond would not reasonably mitigate a true risk that the accused would seek to avoid prosecution. The evidence, findings, and conclusions generated in the bail-review hearing do not support the imposition of a $ 100,000 bail on Mr. Rougeau.
¶ 32. In this case, Mr. Rougeau had successfully completed probation in the past; was born and raised in Vermont; had family, including a daughter, living in Vermont; and had worked for the same employer for thirteen years. Further, as a result of the shotgun blast to his torso, he *610 now had health issues that affected his mobility. Finally, I note, he waived extradition to return to Vermont from New York where he was hospitalized as a result of his wounds. It does not sound as if he, in any way, sought to avoid prosecution.
¶ 33. I see nothing in the record as it stands that supports the bail amount imposed. I would reverse, strike the bail amount, and remand for consideration of any conditions of release considered necessary in a release pending trial.

In the same Act, the Legislature put a cap on the amount of bail that could be imposed on misdemeanor offenses that are eligible for expungement of a maximum amount of $ 200.00. Everything about the legislation points to a new way of avoiding pretrial incarceration. 2017, No. 164 (Adj. Sess.), § 1.

I use the term "accused" throughout this dissent because Mr. Rougeau is just that, accused. And, I note, the Legislature refrained from using the term "defendant" in the bail statutes, preferring to refer to "a person charged with a criminal offense." I cannot speak for the Legislature, but I chose to use the label "accused" to emphasize that the presumption of innocence still exists.

The State contended: "He clearly has at least a number of people, family members, who would be willing to stake their own money to either believe that he would appear to be prosecuted or would be able to bring him here to be prosecuted."