**ENTRY ORDER**

2020 VT 97

SUPREME COURT DOCKET NO. 2020-258

OCTOBER TERM, 2020

| | | |
|---|---|---|
| State of Vermont | } | APPEALED FROM: |
| | } | |
| | } | |
| v. | } | Superior Court, Rutland Unit, |
| | } | Criminal Division |
| | } | |
| David Downing | } | DOCKET NO. 489-7-20 Rdcr |

Trial Judge: David R. Fenster

In the above-entitled cause, the Clerk will enter:

¶ 1. Defendant David Downing appeals an order holding him without bail pursuant to 13 V.S.A. § 7553a. He argues that the weight of the evidence is not great as to the aggravated-assault charge that forms the basis for the hold-without-bail order; that because the trial court will not likely be commencing his trial within sixty days of his arraignment he cannot be held without bail for any period of time pursuant to 13 VSA § 7553a; and that the sixty-day clock began running on the date he was first held without bail rather than, as the trial court held, the date of the trial court's decision following the weight-of-the-evidence hearing. The decision to hold without bail under § 7553a is affirmed.

¶ 2. Pursuant to 13 V.S.A. § 7556(d), defendant is entitled to a review de novo on the merits of the denial of bail by a single Justice of the Supreme Court, with no deference on matters of fact or law to the trial court that issued the hold-without-bail order. At the October 15 hearing, the parties stipulated to the admission of the entire record from the trial court's October 1 weight-of-the-evidence hearing, including admitted exhibits. Neither party offered any additional evidence.

¶ 3. For the reasons set forth below, this Court concludes that the weight of the evidence is great, defendant may be held for up to sixty days notwithstanding the unlikelihood that his trial will commence within that time, and the sixty-day clock began running on the date the trial court ordered him held without bail following a full evidentiary hearing.

I. Procedural History

¶ 4. On September 2, 2020, defendant was arraigned on two counts of burglary into an occupied dwelling under 13 V.S.A. § 1201(c)(3)(A), simple assault under 13 V.S.A. § 1023(a)(1), unlawful mischief under 13 V.S.A. § 3701(c), violation of an abuse-prevention order under 13 V.S.A. § 1030(a), and aggravated assault under 13 V.S.A. § 1024(a)(1). At that time, the court

granted the State's motion to hold defendant without bail pending an evidentiary hearing under 13 V.S.A. § 7553a.

¶ 5. At the conclusion of the weight-of-the-evidence hearing on October 1, 2020, the trial court concluded that the evidence, viewed in the light most favorable to the State and excluding modifying evidence, established that the defendant attempted to cause serious bodily injury to another, and that this aggravated-assault charge was a felony eligible for a hold-without-bail order. The court found by clear and convincing evidence that defendant's release presented a substantial risk of physical violence to a person and that no condition or combination of conditions would reasonably prevent the physical violence. The court rejected defendant's arguments that the court had no authority to hold defendant without bail under 13 V.S.A. § 7553a because it could not hold a trial within sixty days as required by Chapter II, § 40 of the Vermont Constitution and 13 V.S.A. § 7553b, and that the operative date for purposes of calculating the sixty days is when bail was initially denied rather than the date a decision was issued following a weight-of-the-evidence hearing.

## II. Weight of the Evidence

¶ 6. This Court concludes that the weight of the evidence is great as to the aggravated-assault charge. The standard for assessing whether the evidence of guilt is great for purposes of 13 V.S.A. § 7553a is the same as that for deciding whether the State can survive a motion to dismiss under Vermont Rule of Criminal Procedure 12(d). State v. Duff, 151 Vt. 433, 439-40, 563 A.2d 258, 263 (1989). In particular, the question is whether the State has established by affidavits, depositions, sworn oral testimony, or other admissible evidence "that it has substantial, admissible evidence as to the elements of the offense" sufficient to "fairly and reasonably" show defendant guilty beyond a reasonable doubt." Id. (quotations omitted).

¶ 7. The elements of the aggravated-assault charge as charged are that defendant "attempt[ed] to cause serious bodily injury to another . . . or cause[d] such injury purposely, knowingly, or recklessly under circumstances manifesting extreme indifference to the value of human life." 13 V.S.A. § 1024(a)(1). "Serious bodily injury" is defined in relevant part as bodily injury that creates "(i) a substantial risk of death; (ii) a substantial loss or impairment of the function of any bodily member or organ; (iii) a substantial impairment of health, or (iv) substantial disfigurement." Id. § 1021(a)(2).

¶ 8. At the weight-of-the-evidence hearing, the transcript of which is the basis for this Court's analysis, the State established that it has admissible evidence to prove the following. On July 20, 2020, defendant knocked on the door of ex-husband, who answered the door. Defendant asked if Allison was there, stating that Allison was his girlfriend. Ex-husband responded, "Good for you," then closed the door. Defendant kicked the door in and approached ex-husband in the kitchen of the home. Ex-husband attempted to defend himself, slipped on a dog dish, and landed on his back. Defendant then jumped on ex-husband and began punching him in the head. Defendant struck ex-husband in the head between fifteen and twenty times over the course of about a minute. At one point, defendant lifted ex-husband's body and threw him to the floor, causing the back of his head to hit the metal dog dish. In the course of this altercation, some part of ex-husband's body caused the metal dog dish to fold in half.

¶ 9. Defendant ran out after ex-husband tried to grab his leg, and ex-husband called 911. Grandmother arrived to watch the children, and an ambulance took ex-husband to the hospital.

¶ 10. Defendant returned to ex-husband's home later that evening and began kicking at the front door. Grandmother took children upstairs to a bedroom, shut the door, and barricaded it with a dresser. Grandmother called 911. Defendant reentered the home. He went upstairs to the bedroom where grandmother was hiding with children and tried to force open the door while grandmother pushed back. Defendant was able to open the door enough to get his face through and told grandmother four times that he was going to find ex-husband and kill him. Defendant left the home before police arrived.

¶ 11. Defendant left his wallet in the yard, and ex-husband retrieved it and gave it to the police officer who responded to the scene. When the officer called defendant and explained that he would be arresting defendant if he returned, and described the process for applying for a warrant if he did not, defendant told the officer that he had a rifle and would kill the officer.

¶ 12. Defendant returned to a residence in New York. In the early hours of the next day, when New York authorities went to defendant's residence in an attempt to arrest him with the Vermont warrant, defendant came outside a number of times, but refused to go with the officers. On at least one occasion, defendant was carrying a small knife that he refused to drop when a police officer ordered him to do so. Authorities had to evacuate the surrounding residences and ultimately succeeded in arresting defendant after a long standoff.

¶ 13. On the basis of this evidence, if believed, a jury could find beyond a reasonable doubt that defendant committed aggravated assault as charged. In particular, even if the State did not prove that ex-husband suffered serious bodily injury, the State presented sufficient evidence to convince a jury beyond a reasonable doubt that defendant attempted to cause a substantial impairment of ex-husband's health or the function of any bodily member or organ. The State presented evidence that, while on top of ex-husband, defendant punched ex-husband fifteen to twenty times in the head over the course of a minute, and picked up defendant's upper body and slammed it to the ground, causing defendant to hit his head. In addition, the State's evidence showed that defendant forcibly entered ex-husband's home by kicking in the door, that he initiated the altercation, and that following the incident, he threatened to kill ex-husband.

¶ 14. The Court rejects defendant's argument that the State's evidence is insufficient to show defendant intended to inflict serious bodily injury, as opposed to simply bodily injury. Defendant concedes that the evidence might be sufficient to support a charge of simple assault but argues that the State did not present direct evidence of the force of defendant's blows, nor evidence that ex-husband was actually injured. Intent may be proven by circumstantial evidence. See State v. Cole, 150 Vt. 453, 456, 554 A.2d 253, 255 (1988) ("Intent is rarely proved by direct evidence; it must be inferred from a person's acts and proved by circumstantial evidence."). The absence of direct evidence of the force of defendant's blows may affect the weight of the State's evidence, but a jury could infer from the record evidence as a whole that defendant intended to inflict serious bodily harm. Defendant's kicking in the door and initiating the assault, the sheer number of punches and duration of the serial punching, the fact that defendant directed the blows at ex-husband's head, the fact that defendant was on top of ex-husband, and defendant's act of lifting up ex-husband's upper body and slamming it to the ground, among other factors, could all support an

3

inference that defendant sought to inflict serious bodily injury. For these reasons, the Court concludes that the weight of the evidence supporting the aggravated-assault charge is great.[1]

### III. The Sixty-Day Rule and COVID-Related Obstacles to Jury Trials

¶ 15.  This Court rejects defendant's argument that because a jury trial is not likely to commence within sixty days, he cannot be held without bail during that time period. The Court accepts the premise that a jury trial in defendant's case will not commence within sixty days of either his initial detention without bail, or the trial court's ruling following the weight-of-the-evidence hearing. But the Court concludes that the language and structure of the Vermont Constitutional provision authorizing preventive detention, and of the corresponding statutes, support the conclusion that defendant may nevertheless be held without bail for up to sixty days.[2]

¶ 16.  Due to the COVID-19 pandemic, the Vermont Supreme Court formally suspended jury trials from March 16-September 1, 2020. See A.O. 49 Explanatory Note, and October 5, 2020 Explanatory Note. In its October 5, 2020 amendment to A.O. 49, the Supreme Court made it clear that, although its formal suspension of jury trials had expired, every trial court in the State would be taking a host of steps to increase the safety of jury trials for all concerned before holding any jury trials. See A.O. 49 October 5, 2020 Explanatory Note. In his opposition to the State's hold-without-bail motion, defendant noted that there were no indications that trials would be resuming in Rutland County within sixty days. The State has not argued otherwise. For purposes of this appeal, this Court takes judicial notice of the fact that there is no plan to commence jury trials in Rutland County prior to December 4 (sixty days from the court's post-weight-of-the-evidence hearing hold-without-bail order). See Press Release, Vermont Judiciary Announces the Resumption of Criminal Jury Trials (October 6, 2020) (explaining that the jury draw for the first case scheduled since the onset of the pandemic was scheduled to begin in Windham County on

---

[1]  Defendant does not on appeal challenge the trial court's conclusion, by clear and convincing evidence, that defendant's release presents a substantial risk of physical violence to a person and that no condition or combination of conditions will reasonably prevent the physical violence. Because this is a de novo review, and given that the above evidence was essentially uncontroverted for the purposes of this hearing, this Court likewise makes its own finding by clear and convincing evidence that defendant's release presents a substantial risk of physical violence to a person (ex-husband) and that no condition or combination of conditions will reasonably prevent the physical violence. Because defendant does not challenge this conclusion, this Court does not elaborate on its reasoning beyond adopting generally the trial court's reasoning in support of its own conclusion to this effect.

[2]  The Court treats the question as one of first impression. In the case of State v. Kelcey, a single Justice of this Court reversed a hold-without-bail order and directed the trial court to set conditions of release where it was apparent that depositions would not be completed until the sixtieth day. No. 2002-398, 2002 WL 34422470, *1 (Vt. Sept. 16, 2002) (unpub. mem), https://www.vermontjudiciary.org/sites/default/files/documents/eo02398.pdf [https://perma.cc/9WFC-9X5N]. The Court's analysis was minimal, and it is not clear whether the Court concluded that defendant was immediately bailable as a matter of law or whether the Court exercised its discretion to dissolve the hold. See State v. White, 2020 VT 62, ¶¶ 10-12, __ Vt. __, __ A.3d __ (confirming trial court's discretion to deny hold, or lift it prior to sixty days, even when court has made the relevant findings pursuant to 13 V.S.A. § 7553a).

December 7, 2020), https://www.vermontjudiciary.org/news/vermont-judiciary-announces-resumption-criminal-jury-trials [https://perma.cc/AJ2E-7N36].

¶ 17. The Vermont Constitution provides that:

> A person accused of a felony, an element of which involves an act of violence against another person, may be held without bail when the evidence of guilt is great and the court finds, based upon clear and convincing evidence, that the person's release poses a substantial threat of physical violence to any person and that no condition or combination of conditions of release will reasonably prevent the physical violence.

Vt. Const. ch. II, § 40. In nearly identical terms, 13 V.S.A. § 7553a provides that a person charged with a felony, an element of which involves an act of violence against another person, may be denied bail under the above circumstances.

¶ 18. Section 40 further provides:

> Except in the case of an offense punishable by death or life imprisonment, if a person is held without bail prior to trial, the trial of the person shall be commenced not more than 60 days after bail is denied. If the trial is not commenced within 60 days and the delay is not attributable to the defense, the court shall immediately schedule a bail hearing and shall set bail for the person.

A separate statute, 13 V.S.A. § 7553b, codifies this requirement in statute.

¶ 19. The Vermont electorate adopted the above constitutional requirements by constitutional amendment in 1994, and the statutes became effective upon the adoption of the constitutional amendment. 1993, No. 143 (Adj. Sess.).

¶ 20. Pretrial detention generally "undermines the presumption of innocence by depriving a defendant of a fundamental value, the right to liberty, without an adjudication of guilt." State v. Sauve, 159 Vt. 566, 573, 621 A.2d 1296, 1300 (1993) (quoting Duff, 151 Vt. at 440, 563 A.2d at 263) (internal quotations omitted). For this reason, we have explained that pretrial "liberty is and must remain the norm, and detention prior to trial or without trial is the carefully limited exception." Id. (quotation omitted). Traditionally, the sole exception to the right to bail was when the accused posed a risk of flight. Id. at 574. Preventive detention "was never an acceptable reason to deny bail." Id.

¶ 21. The constitutional amendment reflected in § 40 carved out a limited constitutional exception to the general principle that a defendant cannot be held prior to trial as a means of protecting others from harm. This Court has described the amendment as an expression of the desire of the voters of Vermont "to permit pretrial detention, in appropriate circumstances, of those accused of violent crimes so as to prevent further harm to the victims of the crimes and to others." State v. Madison, 163 Vt. 360, 363, 658 A.2d 536, 539 (1995). This Court has explained that the right to a trial within sixty days serves several purposes, including to prevent undue and oppressive incarceration prior to trial. State v. Lohr, 2020 VT 41, ¶ 17, __ Vt. __, __ A.3d __ (mem.).

¶ 22.   Our resolution of this case requires us to construe and apply both the constitutional provisions and the statutes.  Because the two are essentially identical as relevant to this issue, "we look primarily to the intent of the voters in adopting the amendment, but we also consider the intent of the Legislature in adopting the statutory counterpart."  Id., ¶ 5 (quotation omitted).

¶ 23.   Defendant argues that in light of this constitutional and statutory structure, the State's ability to hold the defendant without bail is inextricably linked with the right to have a trial within sixty days of being held.  He cites a thoughtful trial court opinion in which the court concluded that the operative language "clearly contemplates the possibility that trial may occur within the 60-day limit."  State v. Barber, No. 1424-12-19 WmCr, slip op. at 7 (Vt. Super. Ct. July 8, 2020).  In that case, the court concluded that "[w]here . . . a defendant's right to a timely trial cannot be vindicated, detention for 60 days prior to a bail hearing is not a carefully limited exception to the norm of liberty."  Id. at 8.  Because the defendant could not be tried within sixty days, the trial court concluded that defendant was immediately bailable.

¶ 24.   The strength of defendant's position depends on whether the sixty-day requirement is, in fact, "inextricably linked" to the constitutional and statutory carve-out to defendant's right to bail such that the possibility of a trial within sixty days is a condition precedent to the applicability of the constitutional carve-out authorizing preventive detention upon certain findings.  This Court concludes, based on the language, structure, and purpose of the amendment that the sixty-day requirement acts as a limitation on the constitutionally authorized preventive detention, but not a condition precedent to its applicability.

¶ 25.   The operative language of § 40 expressly enumerates the conditions necessary to support a preventive detention order:

- The defendant must be accused of a felony
- An element of the felony must involve an act of violence against another person
- The evidence of guilt must be great; and
- The court must find, based on clear and convincing evidence, that the person's release poses a substantial threat of physical violence to any person; and
- The court must find based on the same standard of confidence that no condition or combination of conditions of release will reasonably prevent the physical violence.

See Vt. Const. ch. II, § 40.  The statute authorizing preventive detention reflects the same list.  13 V.S.A. § 7553b.  Neither the constitutional nor statutory provision includes a reference to a timely trial as a precondition to a hold-without-bail order.

¶ 26.   Moreover, in describing the sixty-day rule, both the Constitution and statute describe the scheduling of a bail hearing as something that must occur immediately "[i]f the trial is not commenced within 60 days and the delay is not attributable to the defense."  Vt. Const. ch. II, § 40; 13 V.S.A. § 7553b(b).  The provisions on their face contemplate the scheduling of a bail hearing when the sixty days have elapsed without a trial commencing; they do not purport to require a bail hearing when it becomes apparent that the sixty days will likely elapse without a trial commencing.

6

¶ 27. The structure of both the constitutional provision and the statutory scheme reinforce that the sixty-day requirement imposes a temporal limit on the duration of pretrial detention, but does not establish a condition precedent to the availability of such detention. In § 40, the provision requiring the court to schedule a bail hearing and set bail if the trial is not commenced within 60 days (and the delay is not attributable to the defense) appears in the third paragraph after the provision authorizing preventive detention if the conditions listed are met. Section 7553b, codifying the sixty-day rule, is in an entirely different section of Chapter 229 of Title 13 from § 7553a, which authorizes preventive detention upon the requisite findings. In both cases, the structure of the Constitutional amendment and the contemporaneously enacted statutes reinforce the conclusion that the sixty-day rule limits the duration of permissible pretrial detention by requiring that either a jury trial commence or the court conduct a bail hearing after sixty days. They do not support the contention that the possibility, probability, or likelihood of a jury trial within sixty days is a condition precedent to the constitutionally authorized preventive detention.

¶ 28. The purpose of the amendment does not call for a contrary conclusion. To the extent the language and structure of § 40 and the associated statutes do not support the view that the possibility of a trial within sixty days is a condition to the application of the preventive-detention condition, defendant could fairly argue that the voters in 1994 did not contemplate a global pandemic, leading to a prolonged suspension of jury trials. But in that unanticipated world in which a defendant will not be tried within sixty days, it is difficult to see how dispensing with the detention authorized by § 40 from the outset, and as a matter of law, better promotes the goals of § 40 than detaining and scheduling a bail hearing in sixty days. The voters of Vermont voted "to permit pretrial detention, in appropriate circumstances, of those accused of violent crimes so as to prevent further harm to the victims of the crimes and to others." Madison, 163 Vt. at 363, 658 A.2d at 539. The voters simultaneously provided a right to trial within sixty days for pretrial detainees in order to, among other things, "prevent undue and oppressive incarceration prior to trial." Lohr, 2020 VT 41, ¶ 17. The voters concluded that after sixty days the pretrial incarceration would become undue and oppressive. The trial court's ruling in this case is consistent with these policies.

IV. When the Sixty-Day Clock Starts

¶ 29. This Court is bound by controlling precedent to conclude that the sixty-day clock pursuant to § 7553b began running on the date the trial court ordered defendant held without bail following a full evidentiary hearing.

¶ 30. The trial court held that under State v. Lontine, 2016 VT 26, ¶ 9, 201 Vt. 637, 142 A.3d 1058 (mem.), the sixty days does not begin to run until the court has issued a hold-without-bail order following the evidentiary hearing required by § 7553a. The State supports this position.

¶ 31. Defendant challenges this conclusion, arguing that the trial court's decision runs afoul of the unambiguous language of Chapter II, § 40 of the Vermont Constitution and § 7553b which both require that the trial of a person held without bail must be commenced "not more than 60 days after bail is denied." (Emphasis added.) He argues that setting the starting point of the sixty days at the date the court issues a decision following an evidentiary hearing upsets the balancing of interests reflected in the 1994 constitutional amendment and corresponding statutes by allowing a defendant to be held without bail in preventive detention for far longer than sixty days, since delays in scheduling the weight-of-the-evidence hearing or in issuing a decision thereafter can add weeks or even months to the duration of a defendant's pretrial incarceration.

7

He points out that in this case the court held the evidentiary hearing twenty-nine days after bail was denied, so that pursuant to the State's argument defendant could actually be held for eighty-nine days rather than sixty. Finally, he notes that the cases the <u>Lontine</u> court relied on in concluding otherwise do not support the <u>Lontine</u> court's conclusions but merely hold that a court can order a defendant held without bail pending the required evidentiary hearing without addressing the impact of this pre-hearing hold on the application of the sixty-day rule. See <u>State v. Morey</u>, No. 2007-421, 2007 WL 5313609 (Vt. Nov. 5, 2007) (mem.) (reversing trial court's order imposing $50,000 cash bail designed to keep defendant incarcerated, but declining to strike bail order on remand because court could hold defendant without bail pending hearing under § 7553a); <u>State v. Passino</u>, 154 Vt. 377, 577 A.2d 281 (1990) (holding that upon probable cause determination, defendant subject to life imprisonment may be held without bail pending full evidentiary bail hearing pursuant to § 7553).

¶ 32. In <u>Lontine</u>, a single specially assigned Justice concluded in the context of an appeal pursuant to § 7556(d), that the operative date for counting the sixty days is the date of the court's decision following the evidentiary hearing required by § 7553a. 2016 VT 26, ¶ 9. Thus, even if this Court finds defendant's arguments compelling, if the <u>Lontine</u> decision is controlling precedent, it resolves the issue in this case.

¶ 33. The question of the precedential impact of a published decision by a single Justice in an appeal pursuant to § 7556(d) appears to be one of first impression. Section 7556(d) establishes an unusual and ephemeral tribunal—a single Justice of the Supreme Court (or specially-assigned judge in that role) who conducts a review de novo, and whose decision is, in turn, appealable to a three-Justice panel of the Vermont Supreme Court. § 7556(e).

¶ 34. This atypical tribunal has some characteristics of a trial court, so in some ways the relationship between a Justice assigned to conduct a review de novo in one § 7556(d) appeal and a Justice assigned to conduct a review de novo in a different § 7556(d) appeal is analogous to the relationship between and among trial courts. Authority from one may be persuasive to another but is not controlling precedent. See, e.g., <u>Threadgill v. Armstrong World Indus., Inc.</u>, 928 F.2d 1366, 1371 (3d Cir. 1991) ("The doctrine of stare decisis does not compel one district court judge to follow the decision of another. Where a second judge believes that a different result may obtain, independent analysis is appropriate.") (citation and quotation omitted); see also 18 Moore's Federal Practice § 134.02[1][d] ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case.").

¶ 35. On the other hand, by statute this appeal is to the Vermont Supreme Court. See 13 V.S.A. § 7556(d). In the absence of an express exception in the Vermont Rules of Appellate Procedure, published opinions of the Supreme Court generally create precedent that binds lower courts. Cf. V.R.A.P. 33.1(d) (expressly providing that an unpublished decision by a three-justice panel is not controlling precedent). For that reason, the better analogy to the relationship between a Justice assigned to conduct a § 7556(d) hearing and a single Justice who decided a previous § 7556(d) appeal may be the relationship between a panel of an intermediate appellate court and a prior panel of the same court. See, e.g., <u>United States v. Barbosa</u>, 896 F.3d 60, 74 (1st Cir. 2018) ("It is common ground that 'in a multi-panel circuit, newly constituted panels are, for the most part, bound by prior panel decisions closely on point.' " (citation omitted)); <u>Smith v. GTE Corp.</u>, 236 F.3d 1292, 1300 n.8 (11th Cir. 2001) ("Under the well-established prior panel precedent rule of this Circuit, the holding of the first panel to address an issue is the law of this Circuit, thereby

binding all subsequent panels unless and until the first panel's holding is overruled by the Court sitting en banc or by the Supreme Court."); see also 13 Federal Practice and Procedure § 3506 ("The courts of appeals generally follow the practice that one panel is bound by the previous decision of another panel of that court.).

¶ 36.    This Court concludes that the latter analogy better "provides stability and predictability to litigants and judges alike, while at the same time fostering due respect for a court's prior decisions." Barbosa, 896 F.3d at 75 (citation omitted).  If this tribunal was not bound by the Lontine decision and issued a contrary ruling, then trial courts in Vermont would be left with conflicting but controlling Supreme Court precedents, providing no guidance whatsoever.  For that reason, this Court concludes that regardless of how compelling defendant's arguments may be with respect to the commencement of the sixty-day period, defendant's recourse must be through an appeal of this decision to a three-Justice panel.

¶ 37.    For the above reasons, based on its review de novo, this Court affirms the trial court's ruling.

Affirmed.

FOR THE COURT:

_____

☒ Publish                                                        Beth Robinson, Associate Justice

☐ Do Not Publish